### Stauffer *against* The Commissioners.

A lien is a necessary and inseparable incident of seizure in execution, by the principles of the common law. A treasurer's warrant, therefore, against a delinquent collector of taxes, levied on his real estate, creates a lien thereon, which will have priority to subsequently entered judgments, and a sale of the estate upon such proceeding will vest in the purchaser a good title.

WRIT of error to the district court of *Lancaster* county. *Hays*, president.

Ejectment by *The Commissioners of Lancaster County* against *George Stauffer*, for a house and lot in the city of Lancaster.

*George Stauffer* had been a collector of county tax for the city of Lancaster, for the years 1824, 1825 and 1826. On the 3d of September 1825, the county treasurer entered in the office of the prothonotary, a transcript of a balance due by *Stauffer* to the county, of 2339 dollars and 15 cents. On the 27th of June 1829, the treasurer issued three several warrants, directed to the sheriff, against *Stauffer*, for balances due in the years 1824, 1825 and 1826, respectively, amounting, in all, to 2719 dollars and 39 cents ; by virtue of which the sheriff levied on the house and lot in controversy. The treasurer issued warrants, commanding the sheriff to sell the property levied, and it was sold, and conveyed to the commissioners of the county. When the deed was offered for acknowledgement, in court, the 26th of November 1829, it was objected to by the judgment creditors of *Stauffer*, but the objections were overruled, and the deed acknowledged. From the 13th of July 1829 until the 21st of September 1829, several judgments were entered against *George Stauffer*; upon one of them, in favour of *Christopher Hager*, a *fi. fa.* was issued to January term 1830 ; by virtue of which the same house and lot was levied ; and upon a *vend. expos.*, subsequently issued, it was sold to *Emanuel C. Reigart*, who now claims the same. From these facts the question arose, whether the proceedings under the treasurer's and commissioners' warrants gave a good title to the plaintiffs, and the court below was of opinion that they did, and gave judgment accordingly, which was the subject of the only exception argued.

*Reigart*, for plaintiff in error, cited the act of 1724, 1 *Dall. Laws* 218, and 3 *Yeates* 50, where that act received a judicial construction, which probably gave rise to the act of the 11th of April 1799. This being a question between creditors, and the plaintiff's title dependent upon lien, it is only necessary to inquire whether the warrants of the treasurer created such a lien upon the property, as that a title might be founded upon it. There is no statute which au-

[Stauffer v. The Commissioners.]

thorises such a lien ; and public convenience and safety require that our courts should persevere in the course which they have heretofore pursued, to discountenance constructive liens. *7 Serg. & Rawle 72* ; *13 Serg. & Rawle 227* ; *16 Serg. & Rawle 17, 412* ; *9 Serg. & Rawle 109.*

*Long*, for defendant in error, whom the court declined to hear.

PER CURIAM.—The transcript directed by the sixteenth section of the act of 1799, was put on the footing of a judgment, in order to give notice of the existence of the lien, and, perhaps, to create it ; but it was not intended to operate as a judgment, in order to found the process of execution, which would, in that aspect, have been directed to issue from the court, and not from the treasurer. There is nothing to show that the treasurer might not seize and sell without any transcript at all, provided the property remained unincumbered in the hands of the collector. And why should not the seizure create the same lien which is incident to every process of execution at the common law ? Because, say the subsequent creditors, there can be no other lien than the one created by the act of assembly. That lien was created to enable the commissioners to indulge the delinquent for the period limited, without jeoparding the debt, and to give them time to take such measures as might be reasonable, in order to turn the property to the best account, but not to provide the securing of it after seizure. For that purpose, a lien is a necessary and inseparable incident of seizure in execution, by the principles of the common law. Property levied is in the custody of the law, the end of which might be prevented if creditors could subsequently acquire a paramount interest in it. In regard to chattels, this undoubtedly holds, so far as to afford the creditor an opportunity to obtain satisfaction, by a reasonable pursuit of his remedy ; and it equally holds in respect to land, which, with us, is a chattel for the payment of debts. The lien of a *testatum* execution has no other foundation ; and, as regards the expired lien of a judgment, within the county, it is not to be doubted that an execution levied would, under the same limitation, create a new lien, though it may not, under the last act of assembly, continue or extend the old one. By this is meant, that the levy would protect the property for a reasonable time, under the process of execution. That case is strictly analogous to the present, in which, though intervening incumbrances would come in between the expiration of the original lien, yet the incidental lien of the latter is not to be displaced by subsequent incumbrances, without gross delay on the part of the treasurer, in the prosecution of the remedy.

Judgment affirmed.