LESTER BARKER vs. WILLIAM H. GATES.

JOSEPH THOMPSON vs. WILLIAM H. GATES.

A sheriff, in advertising and selling real estate in separate parcels on a number of execu-
tions of different dates as to liens, must apply the bid on the first sale in satisfaction
of the oldest lien. A prior judgment creditor as to the youngest execution can not
redeem all the pieces sold by paying only the amount of the judgments older than his :
he must pay the amounts bid.

*Motion by Gates and Thompson to set aside a sheriff's sale, and for a
mandamus.* --- On the 6th May, 1842, a judgment was rendered by a
justice of the peace, in favor of Noyes & Tracy, against the defendant
Gates, for $99·30; which, on the same day, was docketed in the office of
the clerk of Oneida county. On that day two other judgments were, in
like manner, rendered in favor of Tracy & Tracy against the said Gates,
and duly docketed; each being for $101·15. On the 7th May, 1842,
judgment was rendered in the above cause of Thompson vs. Gates, for
debt $3000, and costs $11·92; which was duly docketed on that day.
And on 6th August, 1842, judgment was rendered in favor of Barker in
the above case, and docketed the same day, for $2036·65. On 5th Au-
gust, 1842, writs of fi. fa. were duly issued on the first three judgments
before mentioned, to the sheriff of the county of Oneida; and shortly
thereafter, a like writ was issued to said sheriff on the judgment in favor
of Barker. By virtue of these writs, the real estate of Gates was sold
by said sheriff on the 14th of October, 1842. The sheriff's advertisement
stated he should sell said real estate by virtue of an execution from the
Supreme Court (meaning the one in favor of Barker), and three from the
clerk's office of the county of Oneida (meaning the aforesaid three judg-
ments in favor of Noyes & Tracys); and that he should sell all the right
which said Gates had *on the 6th May*, 1842. On the day of sale, the
sheriff put up and sold the land as follows : *First*, the undivided half of
one hundred and twenty acres, which was put up and sold on the execu-
tion in favor of Barker, and one of the executions in favor of the Tracys:
said land was sold to said Barker at $600. *Second*, the undivided half
of two acres, which was sold on the Barker execution and the other
execution in favor of said Tracys : it was sold to Barker at $50. *Third*,
about two acres of land, which were sold on the two executions last
mentioned and the execution of Noyes & Tracy : Barker became the
purchaser at $600. Barker thereupon advanced money to pay off the
three judgments of the 6th May 1842, and the sheriff's fees, and the
residue was endorsed on the execution in his favor. Certificates for said

pieces of land were duly made to him by the sheriff, &c. On the 11th January, 1845, which was within the period for redemption, proper papers were prepared by Thompson, and served on the sheriff, to whom $401·30 were then paid, in order to redeem said *three* parcels of land from said sale; the said Thompson making payment of said sum, for the purpose of redeeming said three pieces of land. The said sum of $401·30 was the amount of said three judgments of the 6th May 1842, and interest and costs thereon; and it was claimed that Thompson was entitled to redeem the same on payment of that sum, without regard to the residue of the amounts bid as aforesaid. Noxon & Comstock, on behalf of Thompson, now move for a mandamus to compel the sheriff to give him a deed for said three pieces; and if that can not be effected, then for such relief as he is entitled to on these facts.

Noxon & Comstock, *Counsel for Mo.*

Noxon, Leavenworth & Comstock, *Attys for Mo.*

J. A. Spencer, *Counsel for Barker.*

Spencer & Kernan, *Attys for Barker.*

Beardsley, Justice. --- Thompson is not entitled to a deed from the sheriff for the three pieces of land, or either of them. Barker had purchased these parcels of land at the sheriff's sale, for twelve hundred and fifty dollars; and Thompson now seeks to acquire his rights by paying about four hundred dollars, the amount of three judgments of the 6th of May, with interest and such costs and charges as are allowed by the statute. But this can only be effected by paying the full amount bid, and not the amount of any particular lien or incumbrance on the land (2 *R. S.* 370, § 45 *et seq.*). The sheriff sold the first piece of land on one of the three executions which had been issued on the judgments of the 6th of May, and on the execution in favor of Barker, issued on his judgment, which was junior to that of Thompson. This was the form of the sale; but the sheriff was bound to apply the proceeds of that sale, in the first instance, to satisfy the three executions on judgments of the 6th of May, before he could apply any part thereof on the Barker execution. Had this been done, the first three executions would have been satisfied by the proceeds of the piece of land first sold, and the two remaining parcels could only have been sold on the execution on the Barker judgment. The sale was conducted irregularly; but it is not now too late to correct what was done amiss, and secure to the several parties what they were entitled to. For this purpose the sheriff should satisfy the first three executions out of the money received by him on the sale of the first piece of

land, and make return to said executions that they were so satisfied. And in the deeds or deed to be given for the last two pieces, the sheriff will recite a sale thereof on the Barker execution only, making no mention of or allusion to the first three executions or either of them. The deed for the first piece will show a sale on one or all of the executions of the 6th of May, so that the purchaser will have title to this piece under a lien of that date, although his title to the last two parcels will rest solely on the lien of the judgment of the 6th of August. This will give effect to the sale according to what was the duty of the sheriff and the rights of the respective parties. If the judgment of Thompson, as was suggested, is fraudulent, Barker can take proper steps to avoid it on that ground. If, on the other hand, it is an honest security, no undue advantage over it will have been gained by the manner in which the sale was conducted by the sheriff. It may be that Barker would choose not to have the sale of the last two pieces stand, as made upon his judgment and execution alone, and on his filing a statement to that effect, within twenty days after notice of this rule, an order may be entered vacating the sale of those pieces, and in that event the sheriff will correct his return to the Barker execution accordingly.

An order entered according to what has been stated, no costs allowed to any one on this motion.