# TOWNSEND BAGLEY v. GEORGE R. WARD AND FREDERICK MEBIUS.

**TITLE ACQUIRED AFTER ISSUE JOINED.**—If, during the pendency of an action of ejectment a stipulation is made between the attorneys, which limits the issues to the title then held by the respective parties, on the trial a Sheriff's deed is not admissible in evidence, executed after the stipulation, even if the deed is given on a Sheriff's sale made before the stipulation was signed.

**SUPPLEMENTAL ANSWER IN EJECTMENT.**—A title acquired by Sheriff's deed, executed after the commencement of a suit in ejectment, can only be made available by the defendant in the action by setting it up in a supplemental answer.

**REDEMPTION FROM SHERIFF'S SALE.**—A purchaser at execution sale, as between himself and a redemptioner, may waive the production of the papers mentioned in the statute as necessary to entitle one to redeem, and such waiver is good as between himself and the parties thereto; and a creditor not claiming to be a redemptioner, but selling the property under his own execution, has no right to complain of such waiver, and cannot claim that the redemption was insufficient because such papers were not produced.

| 37 | 121 |
| 86 | 121 |
| 37 | 121 |
| 97 | 204 |
| 97 | 207 |
| 37 | 121 |
| 111 | 486 |
| 37 | 121 |
| 119 | 195 |
| 37 | 121 |
| 121 | 661 |
| 37 | 121 |
| 125 | 472 |
| 37 | 121 |
| 142 | 540 |

Statement of Facts.

IDEM.—A redemption from Sheriff's sale is a transfer of the certificate of sale; and if a redemption is made to the satisfaction of the purchaser, and the person redeeming was entitled to redeem, the Sheriff's deed to the redemptioner passes the same title that it would have passed to the purchaser if executed to him without redemption, even if the statutory requirements were waived by the purchaser, and he received less than he was entitled to.

EVIDENCE OF A REDEMPTION.—If one party introduces evidence showing that a redemptioner redeemed from a Sheriff's sale, the other party may then introduce the Sheriff's deed to the redemptioner, without also showing that the papers required by the statute to entitle one to redeem were produced.

ATTACHMENT LIEN.—When a judgment is rendered and becomes a lien upon the real property attached, the lien of the attachment is merged in that of the judgment, and has no effect, except to confer a priority in the lien of the judgment, and does not revive upon the expiration of the two years lien of the judgment.

EXECUTION WHILE JUDGMENT LIEN LASTS.—The only purpose of an execution, in respect to real estate upon which a judgment lien subsists, and while it subsists, is to enforce the lien by a sale of the property. Doubtless lands not subject to the judgment lien may be levied upon by virtue of an execution.

LEVY OF EXECUTION UPON REAL ESTATE.—The levy of an execution upon real estate, during the time that the judgment upon which the execution issued was a lien upon the same, neither extends this lien of the judgment, nor does it create a new lien upon the property.

LIEN BY LEVY OF EXECUTION.—If an execution is issued and levied on real estate while the judgment lien subsists, and is returned without a sale, and after the judgment lien expires another execution is issued and levied, and a sale is made, the sale takes effect by relation at the time when the second execution was levied.

IDEM.—When there are no judgment or attachment liens, the levy of an execution upon real property operates as it does upon personal property; that is, the execution first levied has a priority of lien as between different executions.

SALE UNDER EXECUTION IN VIOLATION OF INJUNCTION.—The issuing of an execution and sale of real property during the existence of a preliminary injunction restraining the same, renders the sale voidable, and the execution and sale may, upon proper proceedings taken, be set aside. Such sale is not, however, void, and a deed made under it confers a valid title.

FILING EXECUTION IN RECORDER'S OFFICE.—It is not necessary, when an execution is levied on real estate, that a copy of the same, with the levy indorsed thereon, should be filed in the Recorder's office.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action of ejectment to recover possession of an undivided half of One Hundred Vara Lot Number Two Hundred and Fifty-three, in the City and County of San Francisco.

The complaint was filed April 10th, 1860.

The attorneys of the respective parties signed and filed the following stipulation:

"For the purpose of this action it is agreed: That on the 5th day of November, 1855, Sanders & Brenham owned and possessed one equal undivided half of Hundred Vara Lot Number Two Hundred and Fifty-three. That plaintiff claims to have Sanders & Brenham's title to said undivided half of said lot, under attachments and judgment sales against Sanders & Brenham, and not otherwise, and said defendants claim to have Sanders & Brenham's title to said undivided half of said lot, under attachments and judgment sales against Sanders & Brenham, and not otherwise; and that the sole issue to be tried herein is, which party to this suit has succeeded to the title of Sanders & Brenham. August 3d, 1860."

During the trial the defendants offered in evidence an execution upon the Massett judgment, issued November 19th, 1857, and proved that the Sheriff made a sale thereunder to James C. Ward on the 10th day of December, 1857. The defendants then offered in evidence a deed from the Sheriff, dated January 29th, 1862, whereby the Sheriff conveyed to James C. Ward the demanded premises, in pursuance of said sale.

The plaintiff objected to the deed because in violation of the stipulation of August 3d, 1860. The Court overruled the objection.

The plaintiff, in rebuttal, offered in evidence the original certificate of sale made by the Sheriff on the above sale of September 10th, 1857, with the following indorsement thereon:

"Indorsed: The within described property redeemed by Mellen Griffith this 24th day of February, 1868.

                                        "JAMES C. WARD.
"By GEORGE R. WARD, Attorney."
"April 28th, 1868. Executed deed to Mellen Griffith."

The defendants' counsel then offered in evidence the deed from the Sheriff to Mellen Griffith, the redemptioner, dated December 28th, 1858, conveying the demanded premises.

The plaintiff's counsel objected to the deed, because it appeared by the return on the execution and the deed, which was offered in evidence by the defendants, that the said property was purchased by James C. Ward, and that Griffith had attempted by the recitals in said deed to redeem said property, and that therefore the defendants must first show that Griffith was a redemptioner and that he had a right to redeem, and must prove that he produced and served the papers necessary to redeem, as required by law; and also on the ground that it appears upon the face of the said deed that the same was given in less than six months from the time of sale. The Court overruled the objection, and admitted said deed in evidence; to which ruling plaintiff's counsel duly excepted.

Defendants then offered in evidence another deed from Charles Doane, Sheriff, etc., to Griffith, dated June 28th, 1861, being more than six months after the sale, and identical with the last mentioned deed, except as to date.

The plaintiff made the same objection to this deed as those made to the former one; the Court admitted the deed in evidence; to which ruling the plaintiff's counsel duly excepted.

The defendants then offered in evidence a deed from Mellen Griffith to James C. Ward, dated April 28th, 1858, conveying Hundred Vara Lot Number Two Hundred and Fifty-three.

The same was objected to as irrelevant, and also on the ground that at the date of said deed the said Griffith had no estate in or possession of the premises. The objection was overruled.

Griffith recovered a judgment on the 23d day of April, 1856, against Sanders & Brenham, in the District Court of the Twelfth Judicial District, City and County of San Francisco, under which judgment he redeemed.

The two years lien of the Massett judgment against San-
ders & Brenham expired on the 18th day of November, 1857,
and the two years lien of the Martin judgment expired on
the 21st day of November, 1857.   An execution was issued
on the Massett judgment November 19th, 1857, and the
property was levied on and sold by the Sheriff to James C.
Ward, December 10th, 1857.   An execution was issued on
the Martin judgment April 30th, 1858, and the property
was levied on and sold to G. F. Sharp on the 5th day of
June, 1858.   Sharp conveyed to the plaintiff.   Executions
were issued on each judgment during the continuance of the
judgment lien, and were levied, but no sale was made under
them.   The levy and sale on the Massett judgment, being
the first after the judgment expired, the Court holds to have
the priority.   Under the sale made December 10th, 1857, on
the Massett judgment, three deeds were given: one to Grif-
fith, as a redemptioner, April 28th, 1858, and another June
28th, 1861; the second deed appears to have been given to
avoid the question that the first was made less than six
months after the sale.   The third deed was made to Ward,
the purchaser, June 29th, 1862.   As the Court holds that
this deed was not receivable in evidence, the title of Ward,
the defendant, comes through the deeds to Griffith, the
redemptioner.

The injunction spoken of in the opinion of the Court was
procured in this wise: Brenham commenced an action on
the 9th day of December, 1855, against Sanders, to dissolve
the partnership of Sanders & Brenham, and procured the
appointment of a receiver of the partnership property.
Peyton, the receiver, commenced an action against the
various creditors, alleging that they were obtaining judg-
ments against Sanders & Brenham, and were threatening to
sell the property of the firm at Sheriff's sale, and refused to
recognize his rights as receiver.   Upon this complaint the
injunction was granted.

The defendants recovered judgment in the Court below,
and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*G. F. & W. H. Sharp*, for Appellant.

The title acquired subsequent to the stipulation was inadmissible, because it was acquired since the filing of the answer, and if defendant wished to rely on it, the only way in which he could do it was by pleading it by supplemental answer. (*Van Maren* v. *Johnson*, 15 Cal. 311; *McMinn* v. *O'Connor*, 27 Cal. 247.) That it was not so pleaded was one of the objections made to the deed.

Plaintiff's title is good, because it was derived from the first lien, viz : the Martin attachment, which was levied 7th November, 1855. This attachment preceded Massett's lien by judgment eleven days. (Massett had no attachment lien. He issued but .did not levy his attachment.) But suppose that Massett, by his judgment, acquired the first lien, still the attempted enforcement of the lien was in violation of the injunction then running against Massett, and could not pass title.

A sale made in violation of the injunction was void. The effect of the injunction must have been to destroy the power of sale, both as to the Sheriff and Massett; otherwise the remedy by injunction would be incomplete. (Hilliard on Injunctions, 146, 147, Sec. 21; 7 Vesey, 413; 9 Wheaton, 738.)

*Wm. Hayes*, for Respondents.

The deed from the Sheriff to James C. Ward was properly admitted in evidence, although executed after the action was commenced; for a deed given by a Sheriff upon a previous sale on execution relates back to, and, in judgment of law, is executed at the time of the sale. (*Jackson* v. *McCall*, 3 Cow. 75; *Jackson* v. *Dickinson*, 15 Johns. 315; *Klock* v. *Cronkhite*, 1 Hill, 110; *Jackson* v. *Raymond*, 1 Johns. Cases, 85; *Heath* v. *Ross*, 12 Johns. 140; Blackwell on Tax Titles, 453.)

The Massett judgment was the first in point of time. It was the first lien, and under it the first sale was had. That sale vested the fee of the premises in James C. Ward, the lessor of the defendants.

*Sydney V. Smith,* also for Respondents.

If the action is to be regarded as controlled by the stipulation of the parties contained in the record, and the Sheriff's deed of January 29th, 1862, to James C. Ward, is to be excluded because made after the date of the stipulation, then respondents say that James C. Ward had at the date of that stipulation succeeded to the title of Sanders & Brenham.

The appellant, for the purpose of defeating the rights of James C. Ward under the sale and deed to him of January 29th, 1862, offered in evidence that Mellen Griffith had redeemed the property. Thereupon respondents gave in evidence two Sheriff's deeds to Mellen Griffith and a deed from Griffith to James C. Ward, all dated prior to the stipulation. It is asserted that this deed of April, 1858, was void because made before the expiration of six months after the sale. Even if it were, still the subsequent deed to Griffith of June, 1859, cured all defects in that respect. But the deed was not void. Section two hundred and thirty-one of the Practice Act provides that property may be redeemed within six months after the sale; and section two hundred and thirty-two provides that if so redeemed, it may be again redeemed from the previous redemptioner within sixty days after such redemption, and that whenever sixty days have elapsed after a redemption, and no other redemption is made, the purchaser shall be entitled to a conveyance. Now, the sale under the Massett judgment was made December 10th, 1857, Griffith redeemed on February 24th, 1858, and he obtained his Sheriff's deed on April 28th, 1858, there having been no other redemption, and sixty days having elapsed since he redeemed.

By the Court, RHODES, J.:

The plaintiff claims title through the judgment of *Martin* v. *Sanders & Brenham*, rendered November 22d, 1865, and the defendant through the judgment of *Massett* v. *Sanders & Brenham*, rendered November 19th, 1855. There are other judgments involved in the case, but the two mentioned present all the material questions. It was stipulated that the " sole issue to be tried herein is, which party succeeded to the title of Sanders & Brenham.". An attachment was issued in the Martin case, which was levied on the property in question November 6th, 1855. An attachment was also issued in the Massett case at the commencement of the action, but it does not appear that it was levied. An execution was issued upon the Martin judgment November 22d, 1855, which was levied upon the property on the next day; and on the 24th of November, 1855, an execution upon the Massett judgment was issued and levied upon the property. In December, 1855, a temporary injunction was issued in the action of *Peyton* v. *Scannell, Sheriff, et al.*, restraining all proceedings under the judgments and executions above mentioned, and the Sheriff returned both the executions. The injunction was dissolved June 5th, 1858. A second execution was issued on the Massett judgment November 19th, 1857—pending the temporary injunction—and under it the property was levied upon, and sold to Ward December 10th, 1857, and was conveyed to him by the Sheriff in 1862.

A second execution was issued on the Martin judgment December 30th, 1857, which was returned without making sale, and a copy was filed in the Recorder's office February 6th, 1858; and on the 30th of April, 1858, a third execution was issued, under which the property was sold, June 5th, 1858, to Sharp. In 1856 Griffith recovered a judgment against Sanders & Brenham, and under it he redeemed the property from the sale under the Massett judgment, and in June, 1859, the Sheriff conveyed the premises to him as a

redemptioner, and in the following month Griffith conveyed the same to Ward, the defendant.

The Sheriff's deed to the defendant of the date of June 29th, 1862, was not admissible in evidence. It was executed subsequently to the stipulation, which limited the issue to the title then held by the respective parties. The rule upon which the defendant relies—that a Sheriff's deed takes effect by relation, *for certain purposes,* at the date of the sale—does not obviate the objection, for the legal title alone is in issue in the action, and that did not pass until after the stipulation was made and the answer filed. Whatever title was acquired under the deed it could not be relied on by the defendant without having been set up by supplemental answer. (*Mc-Minn* v. *O'Connor,* 27 Cal. 247; *Moss* v. *Shear,* 30 Cal. 472.)

The plaintiff's objection to the evidence and findings in respect to the redemption by Griffith from the sale to defendant is not well taken.

The plaintiff introduced evidence showing that such redemption was made, and he cannot complain that the defendant did not supplement the evidence by production of the papers upon which Griffith claimed the right. The Sheriff's return, produced by the plaintiff, had this indorsement: "The within described property redeemed by Mellen Griffith, this 24th day of February, 1858. James C. Ward, by George R. Ward, attorney." Whatever may be the rule where another creditor or the judgment debtor claims the right to redeem either from the purchaser or a redemptioner who resists the claim, it is clear that as between the immediate parties to the redemption, the production of the papers mentioned in the statute may be waived. A creditor not pursuing that remedy, but proceeding under his own execution, has no more cause to complain of such waiver than of the fact that the purchaser did not insist upon all the percentage to which he was entitled. The redemption is virtually a transfer of the certificate of sale, and although the redemptioner might not be entitled to demand the amount of his

lien from a subsequent redemptioner, because of his failure to strictly comply with the law; yet, if he was entitled to redeem, and effected the redemption to the satisfaction of the purchaser, the Sheriff's deed passed the same title that it would have done had it been executed to the purchaser without redemption. It was held in *People* v. *Ransom*, 4 Denio, 148, that the purchaser may dispense with the production of any paper which would be required where the redemptioner was *enforcing* the right of redemption against a purchaser. Mr. Justice Bronson, in delivering the opinion of the Court, said: " The immediate parties to the transaction [the redemption] may make what bargain they please. They may respectively insist on all that the law will give them, or they may accept of less. But whether they can omit anything required by the statute so as to affect other creditors coming to purchase, is a very different question." The opposite view was taken in *People* v. *Ransom*, 2 N. Y. 490, in which it was considered that the question was one of power in the Sheriff to execute the deed; but we think the opinion of Mr. Justice Bronson is more consonant with principle and reason; and we are of the opinion that, if the purchaser acknowledge in writing the redemption by one entitled by law to redeem, the Sheriff has authority to execute to him the deed, without inquiry as to the papers produced to the purchaser.

We come now to a question of greater importance and of some difficulty—the question upon which the former decision mainly turned—whether the levy of an execution upon real estate, during the pendency of a judgment lien, constitutes a new and distinct lien. We regret that counsel have not given this question more thought and labor. The chief cause of difficulty in construing the statute arises from the circumstance that our statute is mainly copied from that of New York, in which the lien of the judgment continues for ten years from the docketing, and an execution may be issued at any time within five years, and after that time, on leave of the Court; while, under our statute, the lien of the

judgment continues two years from the time it is docketed, and execution may issue at any time within five years.

In the investigation of the question, the attachment, judgment, and executions will come up for review. The purpose of an attachment is to hold the property of the defendant as security for such judgment as may be rendered, (Practice Act, Sec. 120,) and when the judgment is rendered and becomes a lien upon the property attached, the lien of the attachment becomes merged in that of the judgment, and the only effect thereafter of the attachment lien upon the property is to preserve the priority thereby acquired, and this priority is maintained and enforced under the judgment. If it does not cease at that time, except as giving priority to the judgment lien, when does it cease? Does it continue after the judgment lien has expired by limitation? The attachment lien, as to its amount, depends upon the *ex parte* statement of the plaintiff, while that of the judgment is certain. The lien of the latter is of a higher order, if it is possible that there can be different ranks among the liens. We will hazard the assertion that the law does not contemplate the existence, at the same time, of two distinct liens, arising by operation of law in one action, for the security of one demand. If the position is correct that the attachment lien ceases, except as maintaining priority for the judgment lien upon the property attached, it does not revive on the expiration of the judgment lien. Our remarks are confined to real property, as the judgment does not constitute a lien upon personal property.

The judgment being a lien for two years from the time it is docketed upon the real estate of the defendant within the county in which the judgment is docketed, and a lien for the same time upon the real estate in any county in which a transcript of the docket is filed with the Recorder, such liens are enforced by executions. That is the only purpose of the execution in respect to real estate while the judgment lien subsists. Section two hundred and ten, prescribing the form of the execution, provides that it shall require the Sheriff to

satisfy the judgment out of the personal property of the debtor, etc., "or if the judgment be a lien upon real property, then out of the real property belonging to him on the day when the judgment was docketed, or if the execution be issued to a county other than the one in which the judgment was recovered, on the day when the transcript was filed in the office of the Recorder of such county, stating such day, or at any time thereafter." This section manifests the purpose of the execution so far as respects the lands that are covered by the lien of the judgment. . Under the execution, doubtless, lands not subject to the judgment lien may be levied upon. It is provided in section two hundred and seventeen that all property, both real and personal, of the judgment debtor "may be attached on execution in like manner as upon writs of attachment." We are not required in this case to reconcile the apparent conflict between this section and section two hundred and ten, which prescribes what the execution shall contain, but we shall hereafter recur to the subject of a levy of the execution upon real property not subject to the lien of the judgment.

The doctrine of *Wood* v. *Colvin*, 5 Hill, 228, that the judgment being a lien upon the lands, a levy is unnecessary, that the judgment binds the lands, and the execution comes as a power to sell, is often cited with approbation, and is, we think, the correct rule. The same principle is stated in *Catlin* v. *Jackson*, 8 Johns. 548. The Chancellor, in delivering the unanimous opinion of the Court of Errors, says: "In several essentials the effect of the execution must be different from a *fi. fa.* levied on personal estate only. The delivery of the *fi. fa.* gives no new rights to the plaintiff and vests no new interests. The general lien is *created by the judgment*, and the execution is merely to give that lien effect—not by vesting a possessory right to the land affected by it in the plaintiff, but by designating it for a conversion into money by the operation of the *fi. fa.* and the act of the Sheriff by virtue of it." Although a *levy* of the execution is unnecessary to give effect to the judgment lien, yet that course is

usually pursued, and the question arises whether the levy creates a new lien distinct from that of the judgment.

The statute has not declared that the levy shall constitute a lien. At common law the levy did not constitute a lien upon lands, nor could the title to lands be affected by an execution in satisfaction of a money judgment. Under a *levari facias*, not even the possession of lands, but only the present profits, were transferred; and when the writ of *elegit* was given by statute, the possession of a moiety of the defendant's lands was given to the plaintiff. (3 Blackst. Com. 417.) Mr. Chancellor Kent, in discussing the subject of the lien of judgments, executions, etc., says: "The lien, after all, amounts only to a security against subsequent purchasers and incumbrancers; for, as the Master of the Rolls said in *Brace* v. *Duchess of Marlborough*, it was neither *jus in re* nor *jus in rem*—the judgment creditor gets no estate in the lands; and though he should release all his right to the land, he might afterwards extend it by execution." (4 Kent Com. 437.) A lien being a mere priority over subsequent purchasers and incumbrancers, it is a contradiction of terms to say that by the levy a new priority is acquired, which, instead of ante-dating, must, of necessity, post-date the priority already held.

The doctrine in New York and in this State is, that in order to preserve the priority acquired by the judgment lien, the sale must be made during the statutory period of the lien. (*Isaac* v. *Swift*, 10 Cal. 81; *Roe* v. *Swart*, 5 Cow. 294; *Little* v. *Harvey*, 9 Wend. 158; *Tufts* v. *Tufts*, 18 Wend. 621; *Graff* v. *Kipp*, 1 Edw. 619; *Pettit* v. *Shepherd*, 5 Paige, 493.) This was so held on the ground that the opposite rule would extend the lien beyond the time mentioned in the statute. It would seem unaccountable that the Legislature should have been so particular in fixing the period of the existence of the judgment lien, and that the Courts should have been so careful in maintaining it, if, at the same time, the plaintiff might have acquired a lien through the execution that would last for the lifetime of the judgment.

In the cases cited, when the executions were issued, but the lands were not sold during the lien of the judgments, there was abundant room for the question now presented. The Vice Chancellor said, in *Graff* v. *Kipp:* "A plaintiff must take care to sell the lands of the defendant before the expiration of ten years, in order to avoid the danger of other incumbrances intervening; or if he wishes to continue the lien without a sale, then he must have a fresh judgment docketed before the other creditors come in and obtain judgments." His familiarity with the effect of the levy of executions would readily have suggested to him the lien of the execution instead of that of a "fresh judgment," if, in his opinion, the former constituted a lien, pending the lien of the latter. Mr. Justice Harris says: "The doctrine on the subject [dormant executions] does not apply to real estate, the lien upon which depends upon the docketing of the judgment, *and not upon the execution or levy.*" (*Muir* v. *Leitch*, 7 Barb. 341.)

There are several provisions of the statute that throw light upon and in some degree test this question. Suppose a judgment is docketed and execution issued and levied upon the defendant's lands, but no sale made within the two years of judgment lien, and that one year subsequent to the docketing of the first, another creditor obtains and dockets his judgment and issues and levies his execution on the same lands. The senior judgment, after the two years of its lien, loses its priority, and we have seen that a sale upon execution, after that time, does not extend the lien of the judgment, and during the third year after the docketing of the judgment the levy, if it constituted a lien, became a *dormant* lien, for during that year the junior judgment has priority, and a sale under it would pass the title; and if, after the expiration of the third year, without sale under the junior judgment, the priority shifts back to the first levy, it must be worked out by a process of revivor, for which we find no warrant in the statute. Or suppose the judgment defendant sells and conveys the lands during the existence of the judgment lien,

and after the levy of the execution, but there is no sale
under the execution until after the judgment lien expires,
do the lands remain chargeable with the judgment? No one
will so affirm unless he is prepared to say that a judgment
remains a lien as against subsequent purchasers for five
years. Subsequent incumbrancers stand on the same footing
with subsequent purchasers as to the operation of prior liens.

The Practice Act (section two hundred and thirty) pro-
vides for a redemption, and those entitled to redeem are the
judgment debtor, his successors in interest, and a creditor
having a lien by judgment or mortgage subsequent to that
on which the property was sold. It is unaccountable that
the Legislature should have omitted those having liens by
executions, if it was intended that the levy should create a
lien. It is provided by section two hundred and thirty-one
that the redemptioner shall pay not only the purchase money,
with the percentage, etc., but also the amount of any lien
prior to that of the redemptioner. Had the second creditor,
in the case first supposed, sold the lands during the second
year of his lien, the first creditor could not have redeemed,
because he did not hold a *subsequent* judgment lien; but if
the first creditor had purchased at that sale, and a third
judgment creditor had come to redeem, he would not have
been required to pay the amount of the first judgment,
because it did not then constitute a lien; but he would have
to satisfy the execution issued upon it, if the levy did, in
truth, amount to a lien.

Under our statutes the period of the docket lien is less
than that during which an execution may issue, and the same
is the case in New York, as well as in many other States.
According to the provisions of section two hundred and
fourteen of the Practice Act in force up to 1861, an execu-
tion might issue, as of course, within five years from the
entry of the judgment; and after that time, upon leave of
the Court, upon showing that the judgment, or some portion
of it, remained unsatisfied and due. The shorter period of
the judgment lien was adopted for the purpose of leaving

real estate unincumbered, as far as possible, consistently with the just demands of creditors for adequate security. The brief time of the lien of a mortgage—four years—also indicates the same policy of the law. Not only would this purpose be defeated if the creditor could, during the judgment lien, acquire a new lien, not merely co-extensive with that of the judgment, but even extending to a time after a recovery upon the judgment itself was barred by the Statute of Limitations; and it would seem that the Courts were trifling, in holding that the levy and proceedings for the sale did not extend the docket lien, an operation that would be useless in the presence of a lien that might continue longer than was possible for the docket lien. If the defendant conveys his real estate, subject to the judgment lien, and an execution is thereafter issued during the period of that lien, such real estate may be levied on and sold under the execution, and if the levy produces a lien, it results that, by operation of law, a lien may be acquired to secure the satisfaction of the judgment upon property which the judgment debtor does not then own. No one would contend for such a principle. If there was no lien when the defendant sold the property, none could be produced by a levy ; but if there was a judgment lien, and the property conveyed to the third person is levied upon and sold under execution, evidently the sale must be the enforcement of the judgment lien, as that was the only existing lien.

Where there are several executions in the hands of the officer at the same time, under which the lands are sold, it is held that the money must be applied first to the satisfaction of the oldest existing judgment lien. (*Roe* v. *Swart*, 5 Cow. 294; *Barker* v. *Gates*, 1 How. Pr. 77; *Jackson* v. *Robert*, 11 Wend. 422.) It was held in *Roe* v. *Swart* that, although the execution upon the first judgment was issued within ten years from the docketing, yet, as the sale was not made within the ten years, the money must be applied to the satisfaction of the second judgment. And where an execution was sent to another county, and was received by the Sheriff before the

judgment was docketed in that county, the execution took priority from the date of the docketing. (*Stoutenburgh* v. *Vandenburgh*, 7 How. Pr. 229.)

The policy of the law, in requiring conveyances, instruments, and proceedings affecting real estate to be made a matter of record, so as to impart notice to those dealing with the property, is manifest from numerous provisions of the statute. The provisions for the recording or filing in the proper office of deeds, mortgages, contracts, notices of *lis pendens*, judgments and attachments, are familiar instances. It may be contended, and, perhaps, maintained, that by the provisions of section two hundred and seventeen, that property " may be attached on execution, in like manner as upon writs of attachment," it was intended that a copy of the writ, with a description of the property levied upon, as in the case of an attachment when real property is seized, should be filed in the proper Recorder's office; but, however this may have been, it is too late now to insist on that construction. The practice has been almost uniform since the adoption of that provision in 1851, to omit the filing of a copy of the execution in the Recorder's office. Cases almost innumerable have been litigated, in which the levies of executions were in question, and it has not been held anywhere, so far as we are apprised, that the filing of a copy of the execution and levy in the Recorder's office was essential to the maintenance of the levy. Vast amounts of land are held under execution sales, in which copies of the writ and levy were not filed in the Recorder's office; and a change in the construction of the clause of the section mentioned, even if we thought the practical construction given to it was incorrect, would be followed by most disastrous consequences. The change in the practice, if any is necessary, should be made by the Legislature, so that its operation might be only prospective. It requires no argument to show the bad policy, if not injustice, of charging those dealing

with the property with constructive notice of a lien which is not a matter of record.

Where there are no judgment or attachment liens, the levy operates upon real property as it does upon personal property—that is, the execution first served has priority. Whether such priority extends to subsequent conveyances, mortgages, or judgments, it is unnecessary in this case to determine. Nor does it become necessary to inquire as to the priority of executions levied before, but the sales made after the expiration of the judgment liens, for the property in controversy was, in each case, levied on and sold under an execution issued after the expiration of the judgment lien, and by the successor of the Sheriff to whom the first executions were issued. The common law rule that the officer who has commenced the execution of process may complete it, though the return day has passed, will not aid the plaintiff, for the rule has not been extended so as to give such power to the officer's successor, except when the power is conferred by statute, and we have no statute that would reach the case; and besides this, the officer who made the sale did not pretend to act under the executions which were first levied upon the property.

If the plaintiff is restrained from issuing or proceeding with his execution until the judgment lien is about expiring, and, therefore, insists that he ought to have the benefit of a lien by means of the levying of the execution, the answer is, that he may demand adequate security when the restraining order is made. If he could acquire such a lien, there is but little doubt that, in order to avoid contingencies, he would in most cases make the execution lien cover all that the judgment lien did, and thus the latter lien would, in effect, be extended three years beyond its original limit. If a lien of a greater duration is desired, the remedy is with the Legislature, and the provisions of the statute on this subject might then be brought into more complete harmony.

Our conclusion upon this branch of the case is that, pending the judgment lien, the levy of the execution neither

extends the existing lien nor creates a new lien; that the sales under the executions took effect by relation at the time they were respectively levied, and not at the date of the levying of the previous executions.

The sale and conveyance under the Massett judgment, being prior to that made under the Martin judgment, the title to the property vested in the defendants, unless the Sheriff's sale was not merely voidable, but void, because of its having been made while the preliminary injunction in *Peyton* v. *Scannell* was in force. The deed was executed after the injunction was dissolved. Counsel have not cited any authority to this precise point, and we shall not discuss the question at any considerable length. The cases all agree with those cited by the plaintiff, that a sale under such circumstances was a violation of the injunction, and that, *pending the injunction*, Massett might have been punished therefor as for a contempt, and that during the same time both the execution and sale might, upon proper proceedings, have been set aside. In many cases of sale or transfer of property in disregard of an injunction issued at the instance of a judgment creditor, the defendant has been fined to the extent of the judgment and costs. The Court, we apprehend, would not be so exact in measuring the penalty, which is usually imposed for the benefit of the injured party, if he still retained his original security for the payment of his judgment, notwithstanding the sale by the defendant, as surely would be the case if the sale was void. Nor would there be any necessity or even propriety in ordering a restoration of the property to its previous condition, if its attempted disposal in violation of the injunction was absolutely void.

We are of the opinion that the sale was not void.

Judgment affirmed.

Mr. Chief Justice SAWYER delivered the following dissenting opinion, in which Mr. Justice SPRAGUE concurred:

Both parties claim through Sanders & Brenham, who owned the *locus in quo* in 1855, and until the title passed by sale under judgments against them—either by a sale under Martin's judgment, under which plaintiff claims, or under Massett's judgment, through which defendant derives title.

The expressed findings in this case, in view of the evidence, are so meagre as to be worthless for the purposes of determining the rights of the parties. The findings not expressed, under the statute as it now stands, must be presumed to be such as to support the judgment. The Court must, therefore, have found that the defendants had a prior lien in some form. In the motion for new trial, the plaintiff, in a very loose form, it is true, specifies substantially as a ground for a new trial, that the Court should have found upon the evidence the prior unexpired lien to have been secured by Martin by an actual levy, either under his attachment, or his execution of November 22d, 1855; whereas the prior unexpired lien was found to have been secured by Massett, and that in this respect the findings are unsupported by the evidence. Although the ground is not so well specified as it might have been, I think plaintiff entitled to have it considered. Martin's judgment was docketed November 22d, 1855, and thereby became a lien for two years from that day. Massett's judgment was docketed on the 19th of November, 1855, and continued a lien for two years. Massett's judgment, by virtue of its being first docketed, became the first judgment lien under section two hundred four of the Practice Act. But no sale took place under either judgment within two years after being docketed, and the respective liens of the judgments thus acquired were lost. Executions were issued upon both judgments, and levied within two years, but this does not extend the liens of the *judgments*—that is to say, the liens acquired by the *mere docketing of the judgment*, under section two hundred

four, *supra*, beyond the two years, as was correctly held, I think, in *Isaac* v. *Swift*, 10 Cal. 81. An execution was issued on the judgment in the case of *Martin* v. *Sanders & Brenham*, on the 22d of November, 1855, which execution was levied on the lot in question, by the Sheriff, on the 23d of November, 1855, and the property duly advertised for sale; but the sale having been stayed by a restraining order of the Superior Court, the Sheriff returned the writ, with his doings indorsed thereon, with a statement that he refrained from selling in consequence of the injunction. On the 24th of November, 1855, an execution issued on the judgment of *Massett* v. *Sanders & Brenham*, which was also levied on the same lot, the property advertised, and the execution returned without a sale, for similar reasons. The first actual levy made under execution was, therefore, under Martin's execution. A second execution was issued on the Massett judgment on the 19th of November, 1857, and levied on the same lot, which the Sheriff afterward, on the 10th of December, 1857, sold to James C. Ward. Defendant claims title under this sale. Another execution was issued on the Martin judgment on the 30th of April, 1858, under which the Sheriff sold said lot to G. F. Sharp, under whom plaintiff derives title. The first sale was, therefore, made under the Massett judgment, and upon the first execution issued and levied *after the expiration of the lien created by docketing the respective judgments*. The question arises on this state of facts, whether a distinct and independent lien can attach to real estate by virtue of an actual levy of an execution upon land upon which the judgment, under which the execution issued, is, by virtue of its being docketed, already a lien, and if so, whether the lien so acquired by a levy expires with the docket lien. The case of *Isaac* v. *Swift* does not touch this question. In that case it was held, not that no new independent lien could be created by a levy, dating from the levy, but only that a levy did not extend the judgment or docket lien, which had before attached. The second judgment lien in that case attached before the levy under the

execution issued on the former judgment, and the question was between the two judgment liens, and whether a levy extends the first judgment lien beyond the time prescribed by the statute, and it was very properly held that it did not. The case of *Wood* v. *Colvin*, 2 Hill, 229, is relied on to show that no new independent lien is created by a levy, when the judgment is a lien, but the case does not, in any respect, touch the question. The question in that case was, whether it was absolutely necessary to make an actual levy under the execution, in order to entitle the party to sell, where the docketing of the judgment creates a lien. And it was held that a levy was not necessary to a valid sale, or to give effect to the judgment lien thus existing. The judgment being a lien already, the execution issued upon it empowers the Sheriff to sell the property thus already in the custody of the law. But whether it is *necessary* to levy in order to enable the party to reap the fruits of a judgment and docket lien already attached, and whether a party *may levy* and thereby secure *a new, independent, more specific*, and under some circumstances more valuable *lien* than his general docket lien, are entirely different questions. The case cited only goes to the first question. It is said that the lien created by docketing the judgment under the statute—the judgment lien, as it is commonly called—is of a higher nature than the lien by levy, and that the latter, therefore, merges in the former. But I apprehend this is a mistaken notion. On the contrary, if there is any difference, the lien by levy is of the higher nature. The lien by levy is specific, takes hold of the specific piece of property by specific acts for the purpose of appropriating it to the specific purpose, while the judgment lien is general and by mere operation of law, without any specific act directed to any particular piece of property, or the manifestation of any intention of the creditor to hold a lien on the specific property, attaches itself, generally, to all lands within the county that may come to the judgment debtor within two years after the judgment is docketed, without reference to any intent of the creditor

to apply it in satisfaction of the debt. "A judgment is considered there [in England] only a *general* security, not a *special* lien on the land. (*Finch* v. *Earl of Winchelsea*, 1 P. W. 279.) Here that part only of the real estate which has been attached is bound; and I see no reason why the lien acquired by attaching a particular piece of land shou'd not :be considered as much a *specific lien* as if acquired by the *voluntary act of the parties.*" (*Carter* v. *Champion*, 8 Conn. .559.) "A judgment is a *general* lien on all the defendant's property; an execution *specific—a seizure* of lands into the officer's hands to satisfy the debt; a pledge *somewhat in the nature of a mortgage, and is so considered in bankruptcy.*" (*Commonwealth* v. *McKisson et al.*, 13 S. & R. 146.) Our statute expressly recognizes this distinction, and gives the judgment creditor greater rights when an actual levy has been made, than where there is none—thus making a lien by levy more valuable than a mere docket lien. "When any judgment has been rendered against the testator or intestate *in his life, no execution* shall issue thereon *after his death;* but a certified copy of such judgment shall be presented to the executor or administrator, and be allowed and filed, or rejected, as any other claim, but need not be supported by the affidavit of the claimant, and, if justly due and unsatisfied, shall be paid in due course of administration; provided, however, that *if the execution shall have been actually levied* upon any property of the deceased, the same may be sold for the satisfaction thereof, and the officer making the sale shall account to the executor or administrator for any surplus in his hands." (Probate Act, Sec. 141.) Thus on a mere money judgment recovered in the lifetime of the deceased no execution can be issued after his death, whether the judgment is a lien or not, for no execution is allowed to issue. It can only be paid "in due course of administration." But when a specific lien has been acquired by an *actual levy of the execution*, upon property, "the same may be sold for the satisfaction thereof." Thus the specific lien of an actual levy is regarded by the statute, as it is, in fact, of a higher

nature than a general judgment lien. And a party is entitled to obtain the most advantageous lien that the law can give him.

In *Wood* v. *Colvin,* 5 Hill, 230, Mr. Justice Bronson said: "After lands were subjected to sale on execution, and before the judgment was made a lien, the sale of lands and of goods on execution stood substantially on the same footing, and *a levy or seizure was necessary in the one case as well as in the other.* But when the judgment was afterward made a lien on the land, there was no longer any reason for requiring a levy before the Sheriff proceeded to advertise and sell." That is to say, not necessary for the purpose of giving effect to and enforcing the lien already in existence, for this was all that was under consideration. But it does not follow that he may not acquire a new and different lien, notwithstanding there may be *no necessity* for it, so far as power to sell within the time of the docket lien is concerned. Under this authority, a levy *did create a lien,* when necessary to be made for any purpose, and such is an incident of every seizure in any mode recognized by law. The ordinary effect of a levy under any process is well stated by the Court in *Stauffer* v. *Commissioners,* 1 Watts, 300, where a transcript for taxes was put on the footing of a judgment, as to the creation of a lien, and it was insisted that no lien could be created by *levy* on a house and lot other than that *created by the statute.* The Court say: "And why should not the seizure create the same lien which is incident to every process of execution at the common law? Because, say the subsequent creditors, there can be no other lien than the one created by the Act of Assembly. That lien was created to enable the Commissioners to indulge the delinquent for the period limited, without jeoparding the debt, and to give them time to take such measures as might be reasonable, in order to turn the property to the best account, but not to provide the securing of it after seizure. For that purpose a *lien is a necessary and inseparable incident of seizure in execution, by the principles of the common law.* Property levied is in the custody of the law, the end of which

might be prevented if creditors could subsequently acquire a paramount interest in it. In regard to chattels, this undoubtedly holds, so far as to afford the creditor an opportunity to obtain satisfaction, by a reasonable pursuit of his remedy; and it equally holds, in respect to land, which, with us, is a chattel for the payment of debts. The lien of a *testatum* execution has no other foundation; and, *as regards the expired lien of a judgment, within the county, it is not to be doubted that an execution levied would, under the same limitation, create a new lien*, though it *may not, under the last Act of Assembly, continue or extend the old one*. By this is meant that the levy would protect the property for a reasonable time, under the process of execution. That case is strictly analogous to the present, in which, though *intervening incumbrances would come in between the expiration of the original lien*, yet the *incidental lien of the latter* is not to be displaced by subsequent incumbrances, without gross delay on the part of the Treasurer in the prosecution of the remedy." (P. 301.)

It is clear to my mind that, without any statutory provision affecting the question, except the adoption of the common law, as modified and in force at the time of the settlement of the United States, an actual levy would create a lien, and in the above extract it is expressly said that, "as regards the *expired lien of a judgment* within the county, *it is not to be doubted that an execution levied* would, under the same limitation, *create a new lien*, though it *may not, under the last Act of Assembly, continue or extend the old one.*" Unless there is something in our statute changing the effect of an actual levy on lands, or inconsistent with this idea, that an actual levy made while there is already an existing docket lien, creates a new, independent, *specific* lien of its own, not independent of the judgment, it is true, but independent of the general lien created by the judgment *proprio vigore*, under the statute, at the moment it is docketed—then a specific lien is still·a necessary incident to a levy. If there is any-

thing limiting the effect of a levy in our statute, it has not been pointed out, and it has escaped my researches. The contrary is, to my mind, clearly manifest. In the first place, the judgment is only made a lien from the *time when it is docketed,* and it is to *continue only two years,* (Prac. Act, Sec. 204,) while the party having a judgment "may at any time within *five years after the entry* thereafter issue a writ of execution for its enforcement;" (Sec. 209;) and in 1855—when this judgment was rendered—after five years, upon leave of the Court. (Sec. 214.) Thus there are three years, when the judgment is docketed immediately, during which there is no docket lien in which he may have execution for its enforcement. The judgment may never be docketed and never become a lien. At all events, he may have execution before a docket lien is acquired, (*Sharp* v. *Lumley,* 34 Cal. 611,) and again after it has expired. In order to its enforcement when there is no judgment lien, a lien must be acquired, and this can only be done by levy. "All * * * property, real and personal, of the judgment debtor * * * shall be *liable to execution. Until a levy, property shall not be affected by the execution.*" (Sec. 217.) This includes *real* as well as *personal* property. Real property may be affected by the *judgment lien* without the actual levy, but not "*by the execution*" "*until a levy.*" The execution refers to the judgment, and if it be for money, requires "the Sheriff to satisfy the judgment, with interest, out of the personal property of such debtor, and if sufficient personal property cannot be found, *then out of his real property; or, if the judgment be a lien upon real property,* then out of the real property belonging to him on the *day when the judgment was docketed,*" etc. Thus it is expressly contemplated that there may be real property upon which there is no judgment lien, and other real property upon which there is a judgment lien. We find, then, from these extracts from the statutes, that executions are to be issued and enforced against real estate, as well as personal property, both before any judgment lien has attached and after it has expired; that property is not to be affected

"by the *execution* until a *levy*;" that the execution requires the Sheriff to satisfy the judgment out of the property of the judgment debtor, whether there is a judgment lien or not. A levy is expressly recognized in terms. There must be some time when the right of the creditor attaches under the execution, and that is when a levy is made. If a levy creates a specific lien upon the property before a judgment lien attaches, or after it expires, why is not the same act followed by the same consequence when performed while there is a judgment lien? It may be unnecessary ordinarily; but there can be no harm in it, and under some circumstances it may be important. The two classes of liens are not inconsistent; they are not of the same character, are not created in the same manner, and are not followed by the same consequences —are not legally identical. Each is governed by the law of its own creation, and depends upon its own peculiar legal principles. There is nothing in the statute, either expressly, or by implication, saying that an actual levy in one case shall not be followed by the same consequence as in the other. And when the law merely gives another, and concurrent remedy, it does not take away a remedy already existing. We cannot say that the policy of the statute is to limit all liens to two years, for no such limitation is prescribed to liens acquired by levy, when there is, at the time, no docket lien in existence. We can only say from this limitation, that the policy is, to limit all *docket* liens—that is to say, the *liens expressly so limited*—to two years, and leave other liens to be governed by other principles. The Legislature might well have thought it best to make a distinction between *general* and *specific* liens in this respect. It might well be thought a hardship that a lien, without any specific act of the creditor indicating a purpose on his part to subject property to his judgment, should for more than two years bind and clog all the property that might come to the debtor, while it would not be a hardship to continue a lien upon a *particular piece of property which the creditor has actually seized, and thereby manifested an intent to hold as his security*, allowing all

the rest to go untouched. One species of lien, without any specific manifestation of intent to appropriate, would hamper all the real estate transactions of the debtor, when the creditor might be perfectly satisfied with that which he had seized. However this may be, it is enough that the Legislature has only limited the general judgment lien, without saying anything about specific liens created by levy. There is another reason why a party should be allowed to secure a specific lien by levy, even while there is a judgment lien in existence. The Sheriff is not permitted to sell without advertising for a period of twenty days. If he should fail to advertise till the nineteenth day before the expiration of the judgment lien, he could not avail himself of his judgment lien, because he could not sell while it would continue alive; while, upon the other view, the fact that he has a judgment would prevent him from securing a lien by levy. There would be nineteen days in which he would be perfectly helpless to prevent any other party from securing a priority. During this time he could do nothing effectual toward enforcing his judgment. He would be practically without a lien, although the statute says he has one. He could, during this time, do nothing toward acquiring a new lien, and he could do nothing toward enforcing his judgment, and the five years for issuing execution and enforcing his judgment would be abridged by construction, against the express provision of the statute giving it to him. Besides, he might be prevented from selling within the two years by a temporary injunction, as in this instance, which would not prevent the expiration of the general judgment lien, and a specific lien, by levy upon a particular piece of real estate, might be necessary to his protection, while it could injure no one. So, again, a judgment debtor might not have any property out of which the judgment creditor could make his money, till nineteen days before the expiration of his two years docket lien, and then, by purchase, or inheritance, acquire real estate, which, during these, to him, halcyon days, he could dispose of at his pleasure, or other younger creditors might seize and appropriate

it during these same nineteen days, while such elder judgment creditor, who has been waiting and watching for nearly two years, must look on in helpless despair while he is being despoiled, because the law has *beneficently* given him a *docket lien,* which it does not allow him to enforce, but which is, nevertheless, efficacious to prevent him from acquiring or enforcing any other.

The *ab inconveniente* argument to sustain the other view does not appear to me to be entitled to much weight against well settled principles of law. Nor do I see that there is greater difficulty in ascertaining the condition of titles than in the case of judgment liens. Under the statute as it now stands, the mode of levying an execution on real estate is prescribed. It "may be attached in execution in like manner as upon writs of attachment," and the mode, in case of attachments, is particularly pointed out, and the levy made a record in the Recorder's office. In 1855 the mode of levying an attachment was the same, but nothing was said as to the mode of levying an execution. As an attachment is but a levy before judgment, on a writ of attachment, instead of after judgment on the execution, but for the same ultimate purpose— really the commencement of the execution of final process, the writ of attachment being in effect a part of the process for executing the judgment when obtained—a levy in the mode prescribed for levying attachments would undoubtedly be regarded as sufficient. I am of the opinion that a creditor by an actual levy of an execution on real estate, acquires thereby a specific lien, distinct and wholly independent of any general lien acquired by operation of law by the mere docketing of the judgment, which new lien is in no way affected by the expiration of the docket lien. And independent of fraud, or some provision of law to the contrary, which has not been brought to my notice, I do not see why it does not continue until the judgment is satisfied, or becomes itself barred or dormant, by the lapse of five years time. After the expiration of five years from the entry of judgment, the lien loses its vitality of course, for the judg-

ment is dead, and incapable of enforcement. There is noth-
ing left to support the lien.

Generally, so far as my observation extends, this has not
been a practical question in the older States under former
statutes, for the reason that judgment liens, and the vitality
of the judgments themselves, upon which they depended,
extended over the same period of time. The lien and the
judgment ran together, and expired, or became dormant
together. But under our statute, where different periods
are established for the enforcement of the judgment, and the
continuance of the *general judgment lien*, the question becomes
both practical and important.

It is insisted that if Martin acquired a lien by virtue of
the levy on November 23d, 1855, the sale was not made on
that execution, or by the same Sheriff, Scannell, but on
another execution issued to Doane, successor to Scannell,
who levied his own execution, and sold only such interest as
he himself seized; that the two Sheriffs were not in privity,
and that Doane had no power to sell an interest seized by
Scannell on another writ. Neither party has collected the
authorities on this point. It is undoubtedly true, that, when
a levy has been made during the life of the execution, and
the execution returned with the levy indorsed, the officer
who made the levy may afterward go on and sell after the
return day of the writ, and even after his term has expired.
(*McFarland* v. *Gwin*, 3 How., U. S., 717.) So when an
attachment had been levied on real estate and returned, and
the judgment was not entered, or execution issued till after
the expiration of the term of the officer, the execution
was finally issued to, and the sale under it made after the
expiration of his term by the officer who levied the attach-
ment, it was held under statutory provisions substantially
similar to our own, that the writ was properly issued to the old
Sheriff, and the sale well made. (*Am. Exch. Bank* v. *Morris
Canal Company*, 6 Hill, 366.) This is on the principle that
the Sheriff commenced the execution of process for enforc-
ing the judgment, when he obtained a lien by levying the

attachment before judgment, and that the party who commences the execution of process is empowered and entitled to complete it. Thus the attachment is practically regarded as part of the process for the execution of the judgment. It does not necessarily follow, however, that the sale would not have been valid, had the execution been directed to, and executed by, the new Sheriff. No authorities have been cited by counsel to the effect that it would not have been valid. The only writ to be issued after judgment, prescribed by our statute for enforcing a judgment for money, is an execution. It commands the Sheriff, as we have seen, to satisfy the judgment out of the property of the judgment debtor. Real estate cannot be taken into manual possession. It must, from the nature of things, be seized by some declaration or notice evidenced by matter of record. It is thus taken into the custody of the law, rather than of the officer. It is permanent in its location and character, and the evidence of the levy must be by matter of record only. When the levy has been made the lien attaches, and, through the execution—not the judgment docket—connects itself with the judgment, and when the execution is returned with the levy indorsed, and the proper notice has been given and filed where such proceedings are required, the levy becomes matter of record, of which all must take notice. Suppose a second execution issues, as seems to be a common and long established practice in this State, and is delivered to a succeeding Sheriff, and he sells the land under the judgment, and in pursuance of the commands of his writ. I do not see why he would not perfect the lien before acquired into a perfect title. The first levy impressed a lien upon the land, and, through the execution authorizing the seizure, connected it with the judgment, and under the second execution the land was sold and the title passed. The property was the property of the debtor, subject to the creditor's lien, and the debtor's property is what the Sheriff, under the second writ, was commanded to sell. The land, through the specific lien of the levy, was in the custody of the law for the satis-

faction of the judgment, and the execution and the Sheriff were the instruments of the law for effecting the sale and working out the satisfaction. In the case of an attachment the sale is not upon the *same* writ as that under which the levy is made, yet the sale on execution subsequently issued must be valid. It is in the same suit, and the levy connects the lien with the judgment, through the writ of attachment, and the sale, under another and different writ, perfects the lien into a title. Why do not the same results follow when the levy is on a different execution in the same case? The several acts are part of one entire proceeding, and the several instruments and the doings evidenced by them are parts of one entire record.

In the case of personalty there might be some difficulty in consequence of want of possession, but I do not perceive why a valid sale could not be thus effected of realty, or even of personalty, provided the old Sheriff should turn over to his successor, having a new writ, the possession of the property already seized. It may be that the Sheriff, by the terms upon which he makes the sale, and the terms of his certificate of sale, and his deed, might in fact limit his sale to such interest as he himself seized. But in this case the record says he sold the lot, not any particular interest seized by him, and conveyed the lot so sold under the respective executions named. While the regular mode, under the general rule of the common law, would have been for the former Sheriff to have completed the execution of the process commenced, I think, upon the fact as now presented, the sale by Doane was well made, and perfected the lien created by the former levy into a title. If I am correct in this, the lien under the first execution issued on the Martin judgment, is prior to the defendant's lien under the Massett judgment, and the Court was in error in finding the latter to be prior.

I do not think, upon a proper construction of the return, that the levy should be regarded as released. The officer does not manifest any intention in his return to release his levy. A perpetual injunction might, perhaps, be regarded

as discharging a levy, but if this be so—for it is unnecessary now to decide the question—I see no reason for holding a levy discharged by a temporary injunction, which may be dissolved on motion, or on a final hearing.

The deed of January 29th, 1862, was improperly admitted in evidence, both under the stipulation and the settled rule in this State. The legal title conveyed by it was not in defendant when the action was brought. If it took effect so as to pass the title by relation at the time of the sale, the acts by which the title was in fact acquired accrued after the commencement of the suit, and it was necessary to plead it by supplemental answer. (*McMinn* v. *O'Connor*, 27 Cal. 247; *Moss* v. *Shear*, 30 Cal. 472.)

As to the Martin attachment, the Court does not state directly whether a levy was found or not, and under the view we have taken it is unnecessary to determine whether there was a levy or not. But if a levy was made, I do not perceive upon what principle the specific lien thus acquired merged in the judgment lien, as claimed. The statute provides that plaintiff, in a proper case, "may have the property of defendant attached as security for the *satisfaction* of any judgment that may be recovered"—not till he can get a judgment lien. The attachment is really a levy in advance of the judgment, as we have seen, and the lien acquired is *specific*. It is acquired by actual seizure, not by mere operation of law. It might be enforced by sale, under execution after entry of and before docketing the judgment. It is superior, rather than inferior, to the *general judgment lien*. I apprehend that a lien acquired by an actual levy, under an execution made before the judgment is docketed, would neither be lost, merged, nor modified by the subsequent docketing of the judgment. The principles before announced would apply. And I see no reason why the same principle should not apply with respect to a lien acquired by an actual levy under an attachment.

The sale under the Massett judgment by Sheriff Doane

while an injunction was in existence against the creditor and the former Sheriff, is not void.  If the sale was made in violation of an injunction, the Court might perhaps have vacated the sale, upon a direct application made in the case at the proper time, on that ground, and the parties would be liable upon proceedings for contempt.  But the sale is valid on a collateral attack.

It is quite evident that the case was not tried or decided in accordance with the principles expressed in this opinion.   I am of opinion, therefore, that our former judgment was correct, and that the judgment should be reversed and a new trial granted.