MONROE GENERAL TERM, November, 1849. *Maynard, Welles, and Marvin,* Justices.

## MUIR *vs.* LEITCH & CARR.

Property belonging to a copartnership is not liable for the debts of the individual members of the firm, until the debts of the firm have all been paid.

A judgment does not lose its lien upon real estate, by the suffering of an execution, issued thereon, to lie dormant in the sheriff's hands.

The doctrine on the subject of dormant executions does not apply to real estate; the lien upon which depends upon the docketing of the judgment, and not upon the execution, or levy. And such lien does not become dormant until the expiration of the statutory limitation of ten years.

The affidavit required by the statute (2 *R. S.* 373, § 60) to be made by a judgment creditor, in order to acquire the title of the original purchaser at a sale of the judgment debtor's real estate upon execution, or to become a purchaser from any other creditor, will not be vitiated by an error in stating the amount due upon the judgment. If the affidavit is made in good faith, and is in proper form, it is all the statute requires.

An agreement made by the assignee of a judgment, with one of the judgment debtors, whereby he postpones the time of payment of the amount due upon such judgment, will not have the effect to postpone the lien thereof, and destroy the same, as against other judgments then existing.

If the holder of a judgment and execution takes a mortgage from one of the judgment debtors, for the amount of the judgment, payable at a distant day, this will not amount to a release of land belonging to another of the judgment debtors from the lien of the judgment and execution.

The fact of a judgment creditor having other security for the debt, besides the judgment, does not, in and of itself, disqualify the judgment from being the foundation of the creditor's right to redeem under the statute, (2 *R. S.* 373, § 60.)

IN EQUITY. The bill in this cause was filed to compel the defendant Carr, as late sheriff of Cayuga county, to convey to the plaintiff the undivided half of certain real estate situated in the city of Auburn and particularly described in the bill, which Carr had sold as such sheriff, by virtue of an execution upon a judgment in the supreme court in favor of the defendant Leitch against Asaph D. Leonard, which was docketed on the 6th day of May, 1840, for $30,000 debt, and $18,04 damages and costs. The premises were sold to Warren T. Worden on the 25th day of September, 1845, for $500, and the usual certificate of sale

given.  On the 25th day of September, 1840, James R. Guernsey, president of the Bank of Western New-York, Rochester, recovered a judgment in the supreme court against Robert Muir, Asaph D. Leonard and Horace A. Chase, for $215,71, which was docketed in the supreme court clerk's office at Geneva, on the said 25th day of September, 1840, at 2 o'clock P. M. and in the clerk's office of Cayuga county on the 28th day of September, 1840, at 8 o'clock A. M.  By an order of the court of chancery, made on the 4th day of May, 1841, upon the petition of the bank commissioners, it was adjudged that the banking association called the Bank of Western New-York, Rochester, had violated the laws of this state binding on the said association, as stated in the petition ; and had thereby forfeited its rights, franchises and privileges, and the appointment of a receiver was ordered, in pursuance of the act of the 27th of April, 1841, entitled " An act respecting the appointment of receivers of moneyed institutions ;" and that a perpetual injunction issue, &c.  By another order of the court of chancery, made on the 6th day of July, 1841, G. H. Mumford was appointed receiver of, &c. of the said association, under the said act.  By an instrument in writing under seal, bearing date February 6, 1845, George H. Mumford as such receiver, for the consideration of twelve and a half cents, sold, assigned, transferred and set over the said last mentioned judgment to Ephraim B. Ellwood.  The assignment recited that the sale of the judgment was made to Ellwood " at a sale of the assets of the Bank of Western New-York, Rochester, made by the receiver of said bank, at public auction, on the 5th day of February, 1845," and that the said judgment was offered for sale and was struck off to Ellwood for twelve and a half cents, he being the highest bidder therefor.  By an indorsement upon the back of the said assignment, without date, the said Ephraim B. Ellwood, in consideration of $5 in hand received, as expressed therein, sold his right and interest to the judgment mentioned in the first assignment to the plaintiff.  On the 23d day of December, 1846, the plaintiff presented to and left with the defendant Carr, the following papers, with the declared object of acquiring the rights of the original purchaser of the prem-

ises sold by him by virtue of the execution in favor of the defendant Leitch against Leonard to wit : 1st. A certified copy of the docket from the clerk's office in the supreme court, of the judgment in favor of Guernsey, president, &c. against Rob't Muir. Leonard and Chase. 2d. A certified copy of the docket of the same judgment in the office of the clerk of the county of Cayuga. 3d. A copy of the order of the court of chancery above mentioned, made on the 6th of July, 1841, being the second of the two above mentioned orders. 4th. A copy of the above mentioned assignment from Mumford, the receiver, to Ellwood, of the judgment in favor of Guernsey, president, &c. 5th. A copy of the assignment from Ellwood to the plaintiff of the same judgment. 6th. An affidavit of the plaintiff, made on the 24th of December, 1846, intended to be in conformity to the statute, and verifying the order of the court of chancery and the several assignments above mentioned, and stating the true sum due upon the judgment mentioned in the assignments. 7th. Another affidavit, made by the plaintiff, substantially like the first, but varying in form. In both the affidavits the amount due on the judgment was stated upon the belief of the plaintiff. At the time of presenting to and leaving with Carr the said papers, the plaintiff paid to him $544 for the same purpose, claiming to redeem the premises from said sale.

After the above papers were left with the defendant Carr and the money paid him by the plaintiff as above stated, and on the same day, the defendant presented to and left with Carr the following papers, for the purpose of acquiring the rights of the original purchaser of said premises at said sale, viz. 1st. A certified copy of the docket of a judgment in the supreme court, in favor of Joseph S. Pitney against Asaph D. Leonard, Satterlee Warden, and Robert Muir, for $1492,03, docketed in the clerk's office of the supreme court at Geneva, September 4th, 1840, at 4 o'clock P. M. 2d. Another copy of the docket of the same judgment in the same office, varying in form from the other. 3d. A copy of the docket of the same judgment in the clerk's office of Cayuga county, showing that the judgment was docketed in that office on the 7th day of September, 1840, at 8½ A. M. 4th. A

copy of an assignment of the last mentioned judgment by the said Joseph S. Pitney to the defendant Leitch, dated in December, 1840, for the consideration, as expressed in the assignment, of $1500. 5th. An affidavit of the defendant Leitch, verifying the assignment to him of the last mentioned judgment, and stating the amount due at the time of making the affidavit to be $2150,79. The defendant Leitch, at the same time and for the same purpose, paid the defendant Carr $550. After these transactions, both parties, the plaintiff and the defendant Leitch, claimed a deed from the defendant Carr under the sale, as having acquired the interest of Worden, the purchaser at the sheriff's sale. In about a week afterwards, Carr executed a deed to Leitch, upon being indemnified by him for so doing.

The bill alledged, among other things, that soon after the judgment in favor of Pitney was rendered, and about the 5th of October, 1840, an execution was issued upon that judgment, against the goods and lands of the defendants therein, and delivered to Hiram Rathbun, then the sheriff of Cayuga county, who, by virtue thereof, levied upon sufficient personal property of Satterlee Warden, one of the defendants, to satisfy it. That after such levy, and some time in December, 1840, Leitch, at the request of Satterlee Warden and Leonard, or one of them, paid the amount due on the judgment to Pitney the plaintiff, and took an assignment of the judgment, and on or about the same time, Leitch received of said Warden his bond and mortgage, conditioned to pay said Leitch $2500 with interest, one half in two, and the other half in three years, which mortgage was upon certain premises therein described, situated in the then village of Auburn, and was duly recorded in the office of the clerk of Cayuga county on the 24th of Dec. 1840. That the amount due on the Pitney judgment so assigned to Leitch was included in the bond and mortgage, and formed a part of the $2500 thereby secured. That soon after the execution of the said bond and mortgage, Leitch, with the consent of Warden, took possession of the mortgaged premises, and had ever since continued in possession and in the receipt of the rents and profits thereof. The bill charged that the mortgaged premises were

subject to the lien of the Pitney judgment, and to levy and sale under the execution issued thereon, and were worth much more than the whole amount due upon the judgment at the time the said execution was delivered to Sheriff Rathbun, and of the execution and delivery of the mortgage. The bill further alledged that after Leitch had become the owner of the Pitney judgment, and after he knew of the execution and levy thereon, he instructed Rathbun, the sheriff who held it, not to sell the property of Warden upon the execution, but to release the same from such levy; and that said Rathbun, in consequence of such instructions, refrained from selling the property, and the same was left in the hands of Warden and used by him for his own benefit, with the knowledge and consent of Leitch. No personal claim was made in the bill against Carr, but the same was waived, except that he convey the premises sold to the plaintiff. The bill contained various other statements and charges as grounds of relief, not necessary to be stated, and prayed that the defendants might answer under oath; that Carr might be directed to convey the premises in question to the plaintiff; that the deed executed by Carr to Leitch might be decreed void and cancelled, and that Leitch be decreed to release to the plaintiff all the interest he might have acquired under his deed.

The answer of the defendant Leitch, among other things, denied any knowledge of any execution having been issued upon the Pitney judgment to Sheriff Rathbun as stated in the bill. The answer further denied that Rathbun the sheriff, by virtue of any execution issued upon the Pitney judgment, levied upon any personal property then belonging to Satterlee Warden, or in his possession, or upon any or sufficient personal property belonging to said Satterlee Warden, or either of the defendants in the Pitney judgment, to satisfy the same or any part thereof. The answer also denied that, at the time the defendant purchased and took the assignment of the Pitney judgment, any personal property of Satterlee Warden had been levied upon, or was subject to any levy, under an execution upon the judgment. In regard to the mortgage mentioned in the bill, given by Warden to Leitch for $2500, the answer stated that about the time

Leitch took the assignment of the Pitney judgment, he lent Warden $1550, and Warden thereupon executed the mortgage to him for $2500, and at the same time Leitch executed to Warden a writing, declaring the uses and purposes for which the mortgage was given, and which were, first, to secure the $1550 lent and interest thereon, and second, to indemnify him against loss in consequence of his paying up and taking the assignment of the Pitney judgment, which was recovered upon a demand which, in law and equity, ought to have been paid by said Robert Muir and Asaph D. Leonard, the other defendants in the Pitney judgment, and upon which Warden was liable as surety for said Leonard and Muir. That the premises embraced in the mortgage were incumbered by two prior mortgages, amounting to rising of $2100 ; one held and owned, at the time, by him the defendant, and the other held and owned by one Beach, and which the defendant had been since obliged to pay, to save his liens, &c. That none of the sums secured by said mortgages, or any part thereof, had been paid to the defendant, and that the mortgaged premises were a scanty and indifferent security for them. The answer admitted that Leitch had received the rents and profits of the mortgaged premises, but insisted that such rents and profits were insufficient to pay and keep down the interest of the several sums, to secure which the mortgages were held by him. The plaintiff put in a general replication.

The cause was brought to a hearing at a special term held in Cayuga county on the 17th of February, 1848, before Maynard, justice, at which time the proofs in the cause were taken, when the cause was ordered to the general term for hearing. The evidence, so far as it affects the decision, is referred to in the opinion of the court.

*David Wright*, for the plaintiff.

*P. G. Clark*, for the defendants.

Muir *v.* Leitch.

*By the Court,* WELLES, J. If the defendant Leitch acquired the rights of the purchaser, at the sheriff's sale of the premises in question, it will be unnecessary to consider the objections to the proceedings and papers of the plaintiff, in his attempt to accomplish the same end ; for as the lien of the judgment in favor of Pitney, upon which the proceedings of the defendant Leitch are founded, was prior to that of the judgment held by the plaintiff, and by virtue of which he claims to have acquired such rights, the defendant was not bound to pay the amount due on the latter judgment, and will be entitled to hold his deed. (2 *R. S.* 372, § 55.)

1. The first point made by the plaintiff is that the Pitney judgment was satisfied by levy upon sufficient property of Satterlee Warden to satisfy it. On this subject it appears by the testimony of Hiram Rathbun, the former sheriff of Cayuga county, that he received the execution on the Pitney judgment on the 5th day of October, 1840, he being such sheriff at that time, and that he so continued until January 1st, 1842. That the execution has remained in his hands ever since. It was tested the 1st Monday of July, 1840, and returnable sixty days from its receipt by the sheriff. That within a very few days after he received the execution, and he thinks within one or two days after, he levied, by virtue of it, upon the following personal property, in possession of Satterlee Warden, viz. a large amount of household furniture in the dwelling house of Warden, being the whole thereof except what was exempt from sale on execution, one, and he thinks, two sorrel horses, a pleasure carriage on the premises of Warden, a large quantity of bran and shorts in possession of Warden in a shop in Auburn, called the Burr Block shop, and a large quantity of unground plaster or gypsum in possession of Warden in an open shed near the Stone Mill in Auburn. That he did not sell any of the said property, in consequence of being instructed not to do so, by the defendant Leitch, who informed him that he, Leitch, had satisfied the plaintiff Pitney, and that he, the witness, should retain the execution in his hands, but not enforce it against the personal property of Warden, which was not to be sold thereon, but that the

Muir v. Leitch.

witness should hold the execution subject to the orders of him, the said Leitch, who claimed to be the party in interest in the execution, having the control of it. It appears by other evidence in the case that the bran and shorts, and the gypsum, referred to by the witness Rathbun as having been levied on by him, was the property of the partnership firm of Warden & Muir, which firm was insolvent, and that the household furniture, and horse and carriage, did not exceed $800 in value, and probably not over $700, and if the value of bran and shorts and the plaster is added, it would not, upon a liberal allowance, amount in value to the principal sum of the Pitney judgment.

An attempt was made to prove, by the witness Robert Muir, that the Pitney judgment had been reduced by payments or otherwise, so that at the time of the proceedings of these parties with a view to acquire the rights of the purchaser at the sale of the premises in question, there was only four or five hundred dollars due upon it. Muir, the witness, testifies to conversations with the defendant Leitch, from which it would appear that such was the fact. But I am satisfied, from other evidence detailed in the case, that Mr. Muir misunderstood the defendant Leitch, or that his recollection has failed him ; and that the declarations he testifies to related to payments upon a judgment in the hands of Leitch, in favor of one Cephas Smith, against the said Asaph D. Leonard and others. If any part of the property levied upon by Sheriff Rathbun, by virtue of the execution issued upon the Pitney judgment, belonged to the firm of Warden & Muir, such property would not be liable for any indebtedness of Warden, except a partnership debt, until the debts of the firm were all paid; and if the firm was insolvent, a purchaser under a sale in pursuance of such levy, would of course acquire no valuable interest in such property. And it follows that the bran and shorts, and the plaster, should be excluded from the estimate, in ascertaining whether the levy was upon sufficient property to satisfy the execution. (*Mathews* v. *Payne and others,* 6 *Paige,* 20. *Buchan* v. *Sumner,* 2 *Barb. Ch. Rep.* 197. *Taylor* v. *Fields,* 4 *Vesey,* 396. *Ex parte King,* 17 *Id.* 115. *Nicholl* v. *Mumford,* 4 *John. Ch. Rep.* 522. *Story on*

*Part.* §§ 363, 364, 365.   *Story's Eq. Jur.* § 675.   *Jackson* v. *Cornell,* 1 *Sandf. Ch. Rep.* 348.     3 *Kent's Com.* 264, 265, *3d ed.*)

It is therefore evident, from the testimony, that the levy was not upon *sufficient personal property to satisfy the execution.* And admitting the value of the property which was levied upon and which was applicable to this execution, to be deducted from the amount of the judgment, there remains a balance which would be a valid lien upon the real estate of Leonard, and which was sufficient to entitle him, under the statute, to acquire the rights of the purchaser at the sale, or to become the purchaser from another judgment creditor who had acquired such rights.

II. The plaintiff's next point is that the defendant Leitch suffered the execution on the Pitney judgment to lie in the sheriff's hands dormant, and that he can not resuscitate that judgment as against a sale upon a junior judgment.   And that while that execution remained dormant, the lien of the judgment was also dormant.   I do not think the authorities cited by the plaintiff, or any others that can be found, sustain the position assumed, that if the execution is dormant the judgment loses its lien upon the land of the defendant.   Qustions in regard to dormant executions, generally, and I believe invariably, arise between conflicting claimants of *personal property.*   The doctrine on the subject does not apply to real estate, the lien upon which depends upon the docketing of the judgment and not upon the execution or levy.   The lien upon the personal estate depends upon the issuing of the execution.   If an execution creditor causes a levy to be made upon the goods of his debtor, and then directs the officer charged with the execution of the process not to proceed for a certain time, or until further orders, his conduct is a fraud upon a junior creditor, whose execution is levied afterwards, and before the directions of the first, to the officer, are countermanded; and in such case, the first execution will be adjudged dormant, and the second will have priority.   In the case supposed, the effect of the conduct of the first creditor is to hinder and delay the other, and tie up the defendant's goods

from other creditors. It is a prostitution of the process of the court, which is designed as a coercive proceeding by the plaintiff against the defendant, to compel payment, and not to prevent other creditors collecting their debts. None of this reasoning can apply to real estate. The lien of the judgment never becomes dormant until the expiration of the ten years statute limitation.

III. It is contended, in the third place, on the part of the plaintiff, that if the Pitney judgment was not dormant, then the premises in question were sold on that execution; the same being then in the hands of the sheriff of Cayuga county; and if so, then the lien of the judgment as to these premises was gone.

If the premises in question were sold upon the execution issued on the Pitney judgment, together with that in favor of the defendant Leitch, the lien of the former judgment upon those premises would be extinguished, although none of the proceeds of the sale would have been applicable to the execution, but were wholly exhausted by the other and older execution. (*Ex parte Paddock*, 4 *Hill*, 544.) But in this case there can be no pretence that the premises were, in fact, sold upon the execution issued on the Pitney judgment. The bill and answer both alledge the sale to have been on the Leitch judgment, and the proof establishes the same thing. The execution on the Pitney judgment was issued and delivered to Sheriff Rathbun in 1840, and the premises were sold in 1845 by another sheriff, who never had an execution, issued upon that judgment, in his hands, and could not have sold upon the one in the hands of Rathbun.

IV. Another point made by the plaintiff is that the defendant Leitch did not in his affidavit state the true sum due upon the Pitney judgment, and did not, in that respect, conform to the requirement of the statute. (2 *R. S.* 373, § 60, *sub.* 3.)

By this, I suppose, is meant that the amount stated in the affidavit to be the true amount due on the judgment was not actually due; or in other words, that the affidavit, though sufficient in form, and certain in this respect, is shown to be un-

Muir *v.* Leitch.

true in point of fact. If that is what is meant by the objection, I think it is founded upon a wrong construction of the statute. I do not think the statute requires that the amount stated in the affidavit shall be, at all events, the true amount. If the affidavit is made in good faith and is in proper form, it is all the statute requires. If the party opposing is able to show that nothing is due, he of course would destroy the lien of the judgment; but if he shows only that there is not as much due as the affidavit states, the lien is still good for the balance, and that balance is as effectual to entitle the party to acquire the rights of the original purchaser, or to become the purchaser from a former judgment creditor, as if the whole amount claimed were due. If in this case there was in fact but a small balance due on the Pitney judgment when Leitch made his affidavit, and he knew it, his swearing that the whole amount, with interest, was due, might be regarded as a fraud upon junior judgment creditors of Leonard, with a view to deter them from attempting to become purchasers from him under the statute. It would have a tendency to stifle competition among judgment creditors, amongst whom it is the policy of the statute to keep the door open for competition during the whole of the last three of the fifteen months succeeding the sale. In this case, however, whatever may have been the fact in regard to the actual amount due, I am unable to discover any ground for an imputation upon Leitch of wilfully misrepresenting the fact, in his affidavit. I am prepared to go further, and to say that the evidence entirely fails in showing that any thing whatever has been paid to Leitch upon the judgment in question; and that if the amount sworn to is no more than the principal of the judgment, with the interest accurately computed thereon, the affidavit in that respect was literally true.

V. The plaintiff's fifth point is that the defendant Leitch, by his agreement with Satterlee Warden, (one of the judgment debtors,) at the time he took the assignment of the Pitney judgment, whereby he postponed the time of payment of the amount due thereon, thereby postponed the lien thereof, and destroyed the same as against other judgments then existing.

I am not prepared to subscribe to this doctrine. As well might it be said that if a plaintiff in a judgment stipulates with the defendant not to issue execution for one year, or any longer or shorter period, the lien of the judgment is thereby suspended or postponed. The statute which limits the duration of the lien of a judgment to ten years from the time of docketing, I think in effect settles this question. I believe it has never been held or understood by the courts that the lien of a judgment is affected by the plaintiff binding himself not to take out execution for any stipulated time less than ten years.

VI. The plaintiff contends, in the sixth place, that the receiving a mortgage for the same debt, payable at a distant day, was in fact and in law a release of the mortgaged property from that execution, and also from the judgment, as no part thereof could be sold thereon.

The counsel for the plaintiff, in support of this point, relies upon 2 *R. S.* 368, §§ 31, 32. *Delaplaine* v. *Hitchcock*, (6 *Hill*, 14,) *and Patterson* v. *Cummin*, (2 *Penn. R.* 32.)

The statute referred to is respecting the case of a judgment recovered for a debt secured by mortgage of real estate, declaring it unlawful for the sheriff to sell the equity of redemption of the mortgagor, &c. in such estate by virtue of any execution upon such judgment, and directing the plaintiff's attorney in such case, to indorse upon the execution a brief description of the mortgaged premises, &c. and a direction to the sheriff not to levy the execution upon such premises, or any part thereof. It is sufficient to say that this case is not within the letter, spirit, or equity of the statute, which was designed to apply to the ordinary case of a debt secured by bond and mortgage, and to confine the creditor's remedy upon the land mortgaged, to the mortgage alone. It certainly could never have been intended to destroy the lien of a judgment to be recovered upon the bond or other security accompanying the mortgage, upon lands other than the mortgaged premises. Admitting in this case, that by the operation of the mortgage which Warden gave to Leitch, the lien of the Pitney judgment upon the mortgaged premises was destoyed, it does not follow, as I can perceive, that

its lien upon other lands belonging to another party defendant, is also destroyed.

The case of *Delaplaine* v. *Hitchcock* was precisely within the letter of the statute, and my only surprise is that any respectable lawyer could have supposed there was any question in that case to present to the court. It certainly bears no analogy to the present. The case referred to in 2d Pennsylvania. Reports, I have not been able to find, but from a short note of it in 2d U. S. Dig. p. 52, § 277, I am inclined to think it was decided under some statute of that state. The note is as follows : "Under directions given by a party or his attorney, to the sheriff, not to consider his judgment, in holding an inquisition of a debtor's lands, the judgment is postponed to all others then in existence against the debtor." If it has any bearing upon the present case, I confess I have been unable to discover it.

VII. The only remaining objection of the plaintiff to the defendant's proceeding is that the defendant Leitch has other securities for the moneys paid by him for the Pitney judgment, and is not in equity entitled to redeem.

The other security referred to is the mortgage of Warden, for $2500, bearing date 22d December, 1840. That was given to secure $1550 lent by Leitch to Warden at the time, and for the further purpose of indemnifying Leitch against loss for paying up and taking an assignment of the Pitney judgment. The land mortgaged was at the time encumbered by two prior mortgages, one of which was to Leitch for about $1500, and the other to Beach, upon which Leitch was obliged afterwards to pay between five and six hundred dollars to save and protect the lien of the mortgage for $2500. The land is proved to have been worth, at the date of the latter mortgage, from $3000 to $3500. Taking the medium ($3250) as the value and the $1550 lent, and the prior incumbrances estimated at $2050, more than exhaust the value of the land, leaving nothing in this mortgage to operate by way of security for the Pitney judgment. So that viewing the subject in this light the equitable force of the point vanishes. The mortgage, so far as it could be regarded as security for the Pitney judgment, was collateral,

and if it could be collected without resorting to the mortgage, it was Leitch's duty to do it; for if the evidence of Satterlee Warden is to be relied upon, the judgment belonged equitably to Robert Muir to pay, and as between Warden and Leonard, only one-half belonged to Warden to pay.

I am not prepared to hold that the fact of a judgment creditor having other security for the debt, besides the judgment, in and of itself disqualifies the judgment from being the foundation of the creditor's right under the statute to redeem. Whatever equities may attach in particular cases arising out of such considerations, it is sufficient that none exists in this case which ought to affect the defendant Leitch.

Upon the whole, I think the defendant Leitch was entitled to the deed upon the sale, which has been executed and delivered to him by the defendant Carr.

The bill must therefore be dismissed, with costs to the defendants to be taxed.

Decree accordingly

SAME TERM. *Before the same* Justices.