[No. 455.    August 20, 1895.]

MARSHALL FIELD & COMPANY, COMPLAINANTS IN ERROR, v. M. ROMERO & COMPANY ET AL., DEFENDANTS IN ERROR.

ASSIGNMENT, DEED OF—BILL IN EQUITY TO SET ASIDE—FRAUD—REFERENCE TO MASTER—FINDINGS—PRESUMPTION—EVIDENCE.—In a proceeding, by bill in equity, to set aside a deed of assignment, on the ground of fraud, where an order of appointment was made by consent, referring the entire case to a master to take proofs and report, his findings thereon, such findings, so far as they involve disputed questions of fact, are attended with the same presumption of correctness as are the findings of a referee, or the special verdict of a jury; and, where there was evidence to sustain such findings, it was error to set them aside.

ID.—ASSIGNMENT OF PARTNERSHIP AND INDIVIDUAL PROPERTY—PAYMENT
OF INDIVIDUAL DEBTS OUT OF PARTNERSHIP FUNDS, TO EXCLUSION OF
CREDITORS—FRAUD.—A deed of assignment by a copartnership firm,
conveying to the assignee all of the partnership and individual prop-
erty of the members, where there was no direction to pay partnership
debts out of partnership property, and individual debts out of indi-
vidual property, and the assignee was directed to pay the individual
debts of a member against the firm out of the partnership property,
to the exclusion of the firm creditors, and, also, to pay taxes assessed
against the firm, and the partners individually, was fraudulent and
void.

ID.—CONTRACTING OF DEBTS, ETC., BY FIRM ON FALSE REPRESENTATIONS
PRIOR TO ASSIGNMENT—CONTINUANCE OF BUSINESS BY ASSIGNEE—
FRAUD.—Where, just prior to such assignment, the firm contracted
debts and secured extensions on false representations as to their
circumstances, and the business was thereafter continued by the
assignee, who employed the assignors, and new goods were purchased
from time to time, to replenish the stock, with the proceeds from the
sale of the partnership goods, sometimes by the assignee, and some-
times by the assignors, the deed of assignment was in fraud of credi-
tors, and will be set aside, as hindering and delaying them in real-
izing what is justly due them, either from their debtors or the assigned
estate.

ERROR, from a decree in favor of defendants, to
the Fourth Judicial District Court, San Miguel County.
Reversed.

The facts are stated in the opinion of the court.

CATRON & SPIESS for complainants in error.

Where a person in failing circumstances buys
goods, and shortly after makes an assignment giving
preferences, in attacking the assignment as fraudulent,
false representations made at the time of the purchase
of the goods, as to the settlement of former debts, and
also statements as to the buyer's future ability to pay,
are proper to submit to the jury on the question of
fraud.   Pine v. Rickert, 21 Barb. 469; S. C., 2 Keyes,
646; Wilson v. Ferguson, 10 How. Pr. 175; Byrd v.
Hall, 1 Abb. Dec. (N. Y. App.) 285.   See, also, Stewart
v. Spencer et al., 1 Curtis, 159.

As to provisions in deed of assignment for payment of all expenses of carrying into effect the trust created, including reasonable counsel fees, see Hill v. Agnew, 12 Fed. Rep. 233; Nichols v. McEwen, 17 N. Y. 22; Heacock v. Durand, 43 Ill. 230.

A provision in a deed of assignment directing the assignee to pay taxes assessed against the assignors as a firm, and individually, is a direct appropriation of the partnership property, and a fraud on the firm creditors. De Wolf v. Sprague Mfg. Co., 49 Conn. 323; O'Neil v. Salmon, 25 How. Pr. 246; Kitchen v. Rainsky, 42 Mo. 427; Smith v. Howard, 20 How. Pr. 121; Douglass v. Winslow, 20 Me. 91; Bradbury v. Smith, 21 Id. 122; Burtis v. Tinsdale, 4 Barb. 588.

"The joint creditors have the primary claim upon the joint fund in the distribution of the assets of bankrupt or insolvent partners, and the partnership debts are to be settled before any division of the funds takes place." 3 Kent's Com. 64; Topliff v. Vail, Harr. Ch. 345; Morgan v. His Creditors, 20 Martin (La.), 599; West v. Skipp, 1 Vesey, Sr. 456; Campbell v. Mallitt, 2 Swan. 608; Doner v. Stanffee, 1 Penn. 198; Ex parte Ruffin, 6 Vesey, 119; Ex parte Harris, 1 Madd. Ch. 583; Ex parte Fell, 10 Vesey, 347; Wooddrop v. Ward, 3 Des. 203; Bell v. Newman, 5 Serg. & R. 78; White v. Insurance Co., 1 Nott. & McG.. 557; Ridgely v. Cary, 4 Harr. & McH. 167; McCulloch v. Dashiel, 1 Har. & Gill, 96; Murray v. Murray, 5 Johns. Ch. 60. See, also, Gordon v. Cannon, 18 Gratt. 388; Hankey v. Garrett, 1 Ves. Jr. 40; Barker v. Goodair, 11 Id. 86; Young v. Keighly, 15 Ves. 563; Muir v. Leitch, 7 Barb. 348; Christian v. Ellis, 1 Gratt. 396; Rogers v. Miranda, 7 Ohio St. 179; Murrill v. Neill, 8 How. 426; Burtis v. Tisdale, 4 Barb. 588; Woddrop v. Price's Ex'r, 3 Des. Eq. 267; Simmons v. Tongue, 3 Bland, Ch. 357; Conkling v. Wash. Univ., 2 Ind. Ch. 497.

Every sale by partners of copartnership property, made for the purpose of diverting the property from the payment of partnership debts and applying it to the satisfaction of a demand against one of the partners, is void as to the creditors of the firm. Ferson v. Monroe, 1 Foster (21 N. H.), 468; Parsons on Contracts, 343, and cases cited; Burnee v. Bunn, 22 Cal. 194. See, also, Bowdoin v. Schalzel, 1 Bail. Eq. 260; Church v. Knox, 2 Conn. 514; Barber v. Hartford Bank, 9 Id. 407; Walter v. Richards, 10 Id.; Frazer & Co. v. Thorp, 9 La. Ann. 518; Day v. McQuellan, 13 Minn. 207.

As to actual interest of each partner in the partnership stock, see Lill et al., Ex'rs, v. Egan, 89 Ill. 609; Bopp v. Fox, 63 Id. 540; Manck v. Manck, 54 Id. 281.

In case of the bankruptcy of two partners, it is settled that the joint creditors shall be first paid out of the partnership estate, and the separate creditors out of the separate estate of each partner. Ex parte Cook, 2 P. Wms. 500; Horseys Case, Id. 35; Ex parte Rowland & Son; Richardson v. Gooding, 2 Ver. 293; Ex parte Crowder, Id. 293; Fleming v. Billinghast, 6 Rich. Eq. 519; West v. Skip, 1 Ves. Sr. 455.

A discretion in the assignee as to the distribution of the assigned property will vitiate the assignment. Jaffray v. McGehee, 107 U. S. 361; Sumner v. Hicks, 2 Black, 532.

A preference of debts of the individual partners in an assignment by a firm is fraudulent, and renders the whole assignment void as to those creditors of the firm who elect to repudiate it. Vernon v. Upson, 60 Wis. 418. See citations of attorneys for appellants.

The payment of interest upon an individual debt as a claim preferred before all others, is fraudulent as against creditors of the firm. Lester v. Abbott, 28 How.P r. 488.

The deed provides for the payment of unlawful interest as a preferred debt contrary to the provisions of the statute, and is void. Secs. 1736, 1737, Comp. Laws, N. M.; Leitensdorfer v. Webb, 1 N. M. 34; Goodrich v. Downs, 6 Hill, 438; Wakeman v. Grover, 11 Wend. 187: Boardman v. Holliday, 10 Paige, 229; Barney v. Griffith, 2 N. Y. 365; Leitch v. Hollister, 4 Id. 211.

A contract is void if it stipulate for the performance of an illegal act, or if it be founded on an illegal consideration. Smith on Contracts, 203, et seq.; Id. 225, et seq.; 1 Par. Con. 458, et seq., and cases cited. See, also, 2 Kent, Com. 466; Broom's Legal Maxims, secs. 704, 710, 713; 4 Am. and Eng. Ency. Law, 869; sec. 14.

Courts will not enforce contracts growing immediately out of and connected with an illegal contract. Armstrong v. Toler, 11 Wheat. 258; Kenrick v. Chamber, 14 How. 38; Tool Co v. Norris, 102 U. S. 322.

"The selection of members of the assignor's family of doubtful competency, as assignees, conduces and it has been held to raise a presumption that there was a secret trust in the assignment for the benefit of the assignor." Burrill on Assignment, 68. See, also, Caldwell v. Rose, Smith R. (Ind.) 190; Caldwell v. Williams, 1 Id. 105.

The assets must be so handled by the assignee as to be converted into cash without delay. Schassel v. Willey, 12 Abb. Pr. 397; Wilson v. Ferguson, 10 How. Pr. 175; Dundar v. Waterman, 17 N. Y. 9.

If the intention in executing the deed be to hinder and delay the creditors, it will vitiate the whole deed, though it be made upon a good consideration. Vernon v. Morton, 8 Dana (Ky.), 263; Ward v. Trotter, 3 T. B. Monroe (Ky.), 1. See, also, Nesbitt v. Digby, 13 Ill. 387; Phelps v. Curtis, 80 Id. 113; Hardin v. Osborn, 60 Id. 93; Kellogg v. Slawson, 15 Barb. 56.

The fraudulent character of the assignment is shown by the fact that the business was continued as before the assignment, and goods bought with the proceeds of the goods sold, etc. Levy's Accounting, 1 Abb. (N. C.) 186; Hart v. Crane, 7 Paige, 37; Dunham v. Waterman, 17 N. Y. 9; Whallon v. Snett, 10 Watts, 237; Am. Ex. Bank v. Inlass, 7 Md. 380. See, also, Meecher v. Stearns, 9 Paige, 398; Connah v. Sedgwick, 1 Barb. (S. C.) 210; Smith v. Leavitts, 10 Ala. 92.

M. SALAZAR for defendants in error.

HAMILTON, J.—This cause comes to us from the Fourth judicial district, in San Miguel county, where a bill was filed by the complainants to set aside a deed of assignment made by the defendants M. Romero & Company, upon the ground of fraud. Answer was filed, the issues made up, and the cause referred to a special master, who made a report to the court, upon which a decree was entered declaring the deed of assignment valid, and ordering a dismissal of the bill. It appears from the pleadings and proofs in the case that during the year 1885, and prior thereto, the defendants M. Romero & Company, were a mercantile firm engaged in business in Las Vegas; that about the twenty-ninth day of September, 1885, they applied to the complainants Marshall Field & Company, at Chicago, Illinois, for the purchase of a bill of goods on credit; that, in order to procure the purchase of these goods, they represented to Marshall Field & Company that the assets of the firm of M. Romero & Company were $75,650, while their entire liabilities were $35,000, thus leaving a surplus of assets of $40,650; that, relying upon these representations so made, Marshall Field & Company sold them a bill of goods, on time, amounting to $3,000; that a portion of this indebtedness matured in November, following, and on the maturity of the indebted-

ness a similar representation of their financial condition
was made to Marshall Field & Company by M. Romero
& Company, which secured the extention of the time of
payment; that this representation of their financial con-
dition made by M. Romero & Company to Marshall
Field & Company, upon the faith of which the goods
were sold, was untrue; that their indebtedness was
much larger, and their assets much less, than repre-
sented; that, as a matter of fact, they were deeply in-
volved, and were so heavily embarrassed, financially,
that on the sixth day of January, 1886, in less than
three months after they purchased the goods of the com-
plainants, they made and executed the deed of assign-
ment, the validity of which is in controversy in this
case. The deed was a conveyance of all of the property
of the firm, and also of all the property owned by the
individual members of the firm, and authorized the as-
signee to take possession, and sell and dispose of all of the
property, at public or private sale, as he might deem
most beneficial to the creditors; that out of the pro-
ceeds realized, the assignee should pay all "costs, ex-
penses, charges, and commissions attending the prepa-
ration and execution of the deed and of carrying into
effect the trust created, including reasonable counsel
fees," and reasonable compensation to the party of the
second part of his services in carrying on the trust.
Then follows in the deed a statement of twenty-seven
preferred debts, which the assignee is directed to pay
in the order of preference in which they are given.
One of these preferences (number 25), for $5,712.38,
was an individual debt of one of the members of the
firm. The assignee was also authorized to pay interest
on a portion of the indebtedness, some of which was
bearing interest at an illegal rate. There is no direc-
tion to the assignee to keep the property and funds of
the firm and of its individual members separate, and to
apply the firm assets to the payment of firm indebted-

ness, and those of the individual members of the firm
to the payment of the individual debts, but the dispo-
sition of the funds, as to the payment of debts and in-
terest, in this regard, is left to the assignee. The com-
plainants, in their bill, attack this deed of assignment
upon the ground that it is fraudulent and void. An-
swer was filed, and issues made up. The order appoint-
ing the special master directed him to "take proofs,
and report his findings thereon with all convenient
speed." Hearing was had, proofs taken, and the mas-
ter made his findings of fact and conclusions of law,
among which are the following, as the most important
findings relating to the questions for decision: First.
The first finding of fact made by the master sets forth
that the complainants are judgment creditors of the de-
fendants. Third. The master finds that the goods
were obtained and credit extended by the complainants
Marshall Field & Company to the defendants M. Ro-
mero & Company upon the representations made to the
complainants by M. Romero & Company. Fourth.
He finds that these representations were false and un-
true. Seventh. He finds that the complainants, when
they sold the goods and extended the credit, did so
upon the faith of the representations made to them by
the defendants. Ninth. He finds that the deed of as-
signment was made on the sixth day of January, 1886,
and was made to Manuel Baca y Ortiz. The deed con-
veys all the property of the firm, as well as the property
of its individual members, and provides for the pay-
ment of certain indebtedness, specifically mentioned
therein, with the interest thereon, as therein specified.
This deed contains twenty-seven preferences, the names
and amounts being specified in the deed. The deed
leaves it optional with the assignee as to whether he
shall sell the property at public or private sale. The
deed of assignment has no directions to the assignee to
pay partnership debts out of partnership property, and
individual debts out of individual property. Eleventh.

That all the twenty-seven preferred creditors mentioned
in the deed of assignment were residents of the territory
of New Mexico, that all of the unpreferred creditors of
said assignors were nonresidents of the territory of New
Mexico, except one.    Fifteenth.    He finds that the debt
of $5,712.38, mentioned as the twenty-fifth preference
in the deed of assignment, was a debt due originally by
Margarito Romero to one Andres Dold, now deceased;
that the same, after the death of Andres Dold, was re-
newed, and the note therefor signed by the firm.    Sev-
enteenth.    That he should pay to Miguel Salazar a note
for $1,000, which bore interest at the rate of fifteen per
cent per annum.    Nineteenth.    That after said deed of
assignment was made the said business was carried on
for about a year, until January 1, 1887, in the name of
the assignee.    However, the name of M. Romero &
Company was retained as a sign over the door.    Romero
and Marquez were employed to assist at the business,
and help manage the same, and sell goods.    Marquez
was the bookkeeper, and goods were bought to replen-
ish stock, sometimes by one, and sometimes by an-
other, but in the name of the assignee, Manuel Baca y
Ortiz.    Twenty-third.    That the firm of M. Romero &
Company was a partnership, and their indebtedness to
complainants Marshall Field & Company was partner-
ship indebtedness.    Twenty-fourth.    Gives the amount
of goods purchased and sold during the time the assignee
carried on the business, and shows that they purchased
new goods to replenish stock, during this period, to the
amount of $17,605.22.    In the last conclusion of the
master, referring to the letter written by the defendants
to the complainants, the following is˙ found by him:
" 'We expect to be out of our trouble in a very short
time.    All we want is an extension of time.'    This dec-
laration, coupled with the continuance of the business,
the employment of the defendants by the assignee, and
the practical management of its affairs by the assignors,
together with the belief expressed by the assignors that

their assets were greater than their liabilities, looks very much as though they had in their minds, in making the assignment, the idea that by gaining time they would be able to tide over their financial difficulties, and, by means of such arrangement, hinder and delay their creditors in the collection of their claims until such time as they could realize sufficient to pay up and come out whole. Such an understanding in making the deed would necessarily avoid it."

From these findings of facts the master concludes, as a matter of law, that the misrepresentations made by the defendants to the complainants at the time they purchased the goods; the fact that the deed failed to specify that partnership debts should be paid out of partnership property, and individual debts out of individual property; that usurious interest was directed to be paid on some of the debts; that the fact that the defendants may have made the deed of assignment to gain time,—were not facts upon which he would undertake to declare the deed void. Various exceptions were filed to the findings of fact and conclusions of law made by the master, which were, in the main, overruled by the court, and the decree entered as above stated, declaring the deed valid, and ordering a dismissal of the bill. The correctness of the action of the court in its rulings on the master's report, and entering this decree, is the matter now before us.

The first question which we deem it proper to consider is the action of the court in overruling certain material findings of the special master. Under our system of practice, the reference of a case to a special master, to take the proofs and report his findings thereon to the court, has become one of general custom in chancery cases; and the growing tendency of this class of litigation has rendered the system of reference, in such cases, one of almost absolute necessity. The master being vested with the power of taking all the testimony,

DEED of assignment: bill to set aside: fraud: reference to master: findings: presumption: evidence.

and deciding controverted questions of fact upon conflicting evidence, is intended as an aid to the court in arriving at a correct conclusion as to the rights of parties in important litigation. It therefore becomes important to determine what effect shall be given to the findings and conclusions of the master in such cases. The master appointed by the court in a particular case is an officer of the court, selected to aid in reaching a conclusion as to certain controverted facts referred to him for determination. The court may refer only one branch of a case to the master, or it may refer to him only some particular question upon which the court desires to be advised, or the court, by consent of the parties, may refer the entire case to the master, with directions to take the proofs and report his findings and conclusions thereon. In either case the powers and duties of the master are limited and fixed by the terms of the order under which he is appointed. If the order of appointment, made by consent, as in this case, refers the whole case to the master, to take the proofs and report his findings thereon, then the findings of the master, in so far as they involve disputed questions of fact, are attended by the same presumption of correctness as would be accorded to the findings of a referee, or the special verdict of a jury. In the case of Kimberly v. Arms, 129 U. S. 512, the court, in passing upon the conclusiveness of the findings of the master in chancery, say: "Its findings, like those of an independent tribunal, are to be taken as presumptively correct,—subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence or in the application of the law, but not otherwise." In the case of Davis v. Schwartz, 155 U. S. 631, the court, in speaking of the effect of the findings of the master upon a question of fact under a consent order, like this, treat the findings as they would the special verdict of a jury, or the

findings of a referee. "In neither of these cases," says the court, "is the finding absolutely conclusive, as if there be no testimony tending to support it; but so far as it depends upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable." The master sees the witnesses, hears their testimony, has an opportunity of observing their manner upon the stand, is not infrequently familiar with the surroundings under which they may give their testimony, and is better capable of weighing their testimony and of reaching a correct conclusion therefrom than either the district or appellate court. If, therefore, the testimony before the master was conflicting, or if it depended upon the credibility of the witnesses, and the master has found the facts from this testimony, his findings in this particular are not subject to attack, and are binding upon the court, unless the court, by an inspection of the record, can discover that there is no testimony to sustain it. The order of reference to the master in this case shows it to have been entered without objection. We must therefore presume that the parties were in court, and assented to it, there being no objection to the reference manifest upon the record. There is abundant evidence to sustain the findings of fact made by the master. In so far, therefore, as the order of the court below sought to set aside these findings of fact, it was erroneous.

The main question, however, for our consideration, is as to whether the deed of assignment is void. It is

ASSIGNMENT of partnership and individual property: payment of individual debts out of partnership funds, to exclusion of creditors: fraud.

contended by the complainants that the assignment is fraudulent and void for the following reasons: That the deed of assignment conveys to the assignee all of the property, both of the firm and of its individual members, and that there is no direction to the assignee to pay partnership debts out

of partnership funds, and individual debts out of individual funds; that the twenty-fifth preference provided for in the deed of assignment, of $5,712.38, was the individual debt of one of the members of the firm; that the assignee is directed to pay this debt out of the funds; that it provided for the payment of interest on certain indebtedness, both firm and individual, some of which was bearing interest at an illegal rate; that it provided for counsel fees for carrying on the trust. We have examined the deed of assignment and the facts which are set forth in this record, and considered the objections assigned by the complainants, upon which they contend the deed to be fraudulent and void; and we are clearly of the opinion that the matters upon which their objections to the assignment are urged are well founded, and fully justify and sustain the position taken. The clear recitals set forth on the face of the deed of assignment contain, in express terms, a positive direction to the assignee to apply the funds of the firm to the payment of supposed debts and obligations for which the firm were not in any way liable. To sustain this deed of assignment can but inevitably result in charging the individual debts of Margarito Romero against the firm of M. Romero & Company, set forth in the deed of assignment, and entitle this individual creditor to share in the distribution of the firm property, as a preferred creditor, to the exclusion of the complainants, as creditors of the firm. The effect of such a result is apparent, as it leads to the fraudulent and illegal appropriation of the firm assets to the payment of individual obligations of a member of the firm; and this must clearly have been the intent and purpose of the parties to this deed, at the time of its execution. A firm of debtors, in failing circumstances, finding themselves pressed by vigilant creditors, and unable to meet their liabilities, in the ordinary course of business, as they mature, have no right, either legal or moral, to

assign and pledge the property of the firm to the payment of the individual obligations of one of its members, to the exclusion of the rights of firm creditors. Under such circumstances the law declares that the property left in the hands of the failing debtor is a trust fund, to which the firm creditors may look, and out of which they have a prior and permanent right to be first paid, and any attempt, on the part of the debtor, to divert this property or fund from the channel in which the law has placed it, is a fraud upon the rights of firm creditors, which justly calls for the interposition of a court of equity. In the case of Burtus v. Tisdall, 4 Barb. (N.Y.) 588, the court say: "It is clearly settled that the joint creditors have the first equitable claim upon the whole for the satisfaction of their debts. Sometimes the copartnership is called a 'trust fund' for the benefit of creditors, and sometimes it has been said that the copartnership creditors have a lien, or a quasi lien, upon it; but, whatever may be the exact nature or extent of these rights, it is certain that the joint debts have a claim to priority of payment out of the whole of the joint funds." In Pars. Partn., p. 253, he says: "It is the universal rule, founded upon obvious justice, that the creditors of a firm are exclusively entitled to all of the assets of the firm until their debts are paid." Chancellor Kent, in volume 3 of his Commentaries, at page 64, says: "So far as the partnership property has been acquired by means of partnership debts, these debts have, in equity, a priority of claim to be discharged; and the separate creditors are only entitled, in equity, to seek payment from the surplus of the joint fund after the satisfaction of the joint debts." The funds and property of a partnership firm, on its failure or dissolution, must first be applied to the payment of partnership debts, and can not be applied to the settlement of individual debts until all of the firm creditors are paid. Wise v. Leitch, 7 Barb. 348;

Rodgers v. Meranda, 7 Ohio St. 179; Murrill v. Neill, 8 How. 426. Every sale or conveyance of copartnership property made by an insolvent firm for the purpose of diverting the property from the payment of partnership debts, and applying it to the payment of demands against one of the partners, is void as to the creditors of the firm. Mead v. Phillips, 1 Sandf. Ch. 85; Lester v. Abbott, 28 How. Rep. 488; Ferson v. Monroe, 21 N. H. 468; De Wolf v. Manufacturing Co., 49 Conn. 282. In the last case the court held the deed fraudulent and void because of the fact that it conveyed both the firm and individual property, and contained a provision authorizing the payment of the debts of the individual members of the firm out of the proceeds of the property of the firm. In speaking upon this subject the court, in rendering the opinion in that case, say: "The obvious effect of these proceedings, if they should be sustained, would be to charge the debts of Amasa Sprague and William Sprague, partnership and individual, or such of them as were due to creditors who assented to the terms of the deed in the manner and within the time prescribed by its conditions, upon the property of the A. & W. Sprague Manufacturing Company, described in the deed, and entitled those creditors to share in the distribution of that property, or its avails pro rata with the assenting creditors of the company, to the exclusion of the plaintiff and all the other nonassenting creditors. And this effect would be in accordance with the manifest intention and purpose of the parties to the deed. There can be no question, therefore, that the deed was executed by the company, and by the Spragues, who joined them in its execution, with the intent and purpose to hinder, delay, and defraud the creditors of the company, unless it was divested of its fraudulent character by the circumstances that it embraces the partnership property of A. & W. Sprague, and the in-

dividual property of the partners, Amasa Sprague and William Sprague, and the property of Mary Sprague and Fanny Sprague. But the deed was not divested by that circumstance of its fraudulent character."

This deed also contains a direction to the "assignee to pay the taxes that were, or might lawfully be, assessed against the said firm and the said partners respectively." This, as we understand it, is a direct authority to this assignee to apply the funds of this insolvent partnership to the payment of taxes for which the individual members of the firm, only, were liable upon their individual property, before the partnership debts were satisfied. Under the authorities above cited, this was a violation of the law, under which the assets of an insolvent firm must be distributed among the creditors of the firm. The individual members have no claim upon the partnership assets until all the creditors are satisfied. The authority of the assignee to use the partnership funds to pay taxes on the property of its individual members was the application of the firm assets to the benefit of its individual members before the payment of the partnership liabilities, and constitutes a fraud upon firm creditors.

Another provision contained in this assignment, which, it is contended, affects its validity, is the direction to the assignee "to pay all just and reasonable costs, expenses, charges, and commissions of carrying into effect the trust hereby created, including reasonable counsel fees." While strong authority has been offered by counsel to sustain their attack on this clause of the deed of assignment, yet, in view of the conclusions reached on other points, we do not deem it necessary to a proper disposition of the case to pass upon this question.

We pass now to the consideration of the findings of the master as to the facts preceding, connected with,

CONTRACTING of debts, etc., by firm on false representations prior to assignment: continuance of business by assignee: fraud.

and subsequent to the assignment, and the conduct of the assignors and the assignee in the management of the estate under the deed. The master found that the statements and representations made by M. Romero & Company to the complainants Marshall Field & Company, wherein they stated the assets of the firm of M. Romero & Company to be $75,650, and the indebtedness of that firm as being $35,000, leaving a surplus of $40,650 were untrue; that the goods were sold and delivered, and the credit extended, by the complainants to the defendants, upon the faith of those representations. The master found that the business was carried on by the assignee for about a year after the assignment as it was before; that the name "M. Romero & Company" remained over the door; that new goods were bought "to replenish stock, sometimes by one, and sometimes by another." In his twenty-fourth finding the master finds that there were purchases made of new goods to the value of $17,605.22, out of the proceeds of the sale of goods in stock. In his last conclusion the master finds, in speaking of the representations made by the defendants to the complainants at the time of the purchase of the goods, and in speaking of the letter written by the defendants to the complainants immediately after the assignment was made, that "it looks very much as if they had in their minds, in making the assignment, the idea that by gaining time they would be able to tide over their financial difficulties, and, by means of such arrangement, hinder and delay their creditors in the collection of their claims until such time as they could realize sufficient to pay up and come out whole." Such arrangement in the making of the deed would necessarily avoid it. Although the master found these facts, he concluded, as a matter of law, that they were not sufficient to avoid the deed, and it was held by him

to be good. While, under the rule adopted, a strong presumption exists in favor of the correctness of the report of the master, in the findings made by him upon a disputed question of fact, and will not be disturbed if there be evidence to sustain them; but if the master has incorrectly applied the law to the facts, the court, in the exercise of its superintending power, will correct the error. Applying what we conceive to be the correct principles of law to the facts, as found by the master, the inevitable conclusion is that this assignment was fraudulent in fact, and made with an intent to hinder, delay, and defraud the creditors of the assignors. In Forbes v. Waller, 25 N. Y. 430, the court say, "The use that was made of the assignment, and the acts of the parties thereunder, must furnish the data to judge of the intent and motives under which it was executed." Take the fact that the defendants obtained these goods and the extension of credit from the complainants by false representations; take the language of the assignors, as contained in their letter addressed to the complainants after the assignment, that "We expect to be out of our troubles soon. All we want is an extension of time,"—and they furnished a motive for this transfer which the law declares illegal. An insolvent and failing partnership debtor, in order to force its unwilling creditors into an indulgence, has no right to place its property beyond the reach of execution, and, under the cloak of a fraudulent assignment, deprive them of the legitimate means which the law gives them for the collection of their claims against a firm. Van Nest v. Yoe et al., 1 Shep. Ch. 8; Kelly v. Slawson, 15 Barb. 56; Gardner v. Com. Natl. Bank, 95 Ill. 298. In the last case the court use this language: "The placing of property in the hands of an assignee for any other purpose than to distribute it, or its proceeds, among creditors, is fraudulent and void, as to creditors. If made to procure

time, or for the benefit of the assignor, it is fraudulent."
In the case of Vernon v. Morton, 2 Dana (Ky.), 263,
the court said: "And again, when it appears upon
the face of the deed of trust that the motives for mak-
ing it were to prevent a sacrifice of the property, a bad
motive is shown,—a motive to obstruct the ordinary
process of law, or the subjection of the property to the
payment of debts,—which vitiates the whole deed."
See, also, Nesbitt v. Digby, 13 Ill. 387; Phelps v.
Curtis, 80 Ill. 113.

Another fact connected with this assignment,
which is found by the master, and which shows the
fraudulent character of this deed, is "the continuance
of the business, and the practical management of
affairs by the assignors." Their employment in the
store; the buying of new goods "to replenish stock,"
sometimes by the assignors, and sometimes by the
assignee, until $17,605.22 of the proceeds of the sale of
goods had been expended in the purchase of new goods;
the continuance of the business at the same place under
the old sign of the firm,—are facts which, if standing
alone in this case, would stamp the assignment as a
fraudulent conveyance, and render the deed invalid, as to
creditors. When an assignment of a stock in trade is
made for the benefit of creditors, as in this case, the
law requires reality and good faith in all the parties
connected with the transaction, and not a sham and a
pretense. The assignor must, in good faith, part with
the possession, management, and control of the stock
and business to the assignee, who must speedily, and
with honest care, reduce the stock to cash, and distrib-
ute it to the creditors. In the case of Levy's Accounting,
1 Abb. (N. C.), p. 186, the court used this language:
"The idea that a general assignee for the benefit of
creditors can, in the exercise of any proper discretion
imposed upon him by virtue of the assignment, proceed
to conduct and carry on the previous business of the

assignor so long as he pleases, or do any act in respect thereto except such as tends to the most speedy conversion of the assigned estate into cash, is wholly untenable; and the acts of the assignee tending to any other result are in fraud of the creditor, in hindering and delaying him in the realization of what is justly due him, either from his debtor or the assigned estate." And where a stock of goods in a retail business is assigned, the assignee can not continue the business and retail the goods as before, with the view of obtaining higher prices, but must sell them at once. It is even held a breach of trust for the assignee to delay the sale of the property for the purpose of retailing it at a higher price. See, also, Hart v. Crane, 7 Paige, 37; Dunham v. Waterman, 17 N. Y. 9; American Ex. Bank v. Inloes, 7 Md. 380.

It is clear, therefore, that in whatever light we view this transaction,—whether we consider the provisions and terms as contained on the face of the deed of assignment, or whether we view it from the conduct of the parties prior to, at the time, and subsequent to its execution, with the facts and circumstances connected with their management of the property under the deed, as found by the master, we must reach the conclusion that the assignment was fraudulent and void, as to creditors of the firm. The decree of the court below will be set aside, and the cause reversed and remanded with directions to the court below to enter a decree canceling and setting aside the deed of assignment, and for such other orders as may be necessary.

SMITH, C. J., and COLLIER and LAUGHLIN, JJ., concur.